**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

_____

| | |
|---|---|
| E.B., D.W., and T.R., on behalf of themselves and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case. No. 19-862 |
| JEFF LANDRY, ATTORNEY GENERAL OF LOUISIANA, in his official capacity; DOUG WELBORN, CLERK OF THE EAST BATON ROUGE PARISH COURT, in his official capacity, as a representative of a DEFENDANT CLASS comprised of all Parish Clerks in the State of Louisiana, in their official capacities; HILLAR MOORE, DISTRICT ATTORNEY OF EAST BATON ROUGE PARISH, in his official capacity, as a representative of a DEFENDANT CLASS comprised of all District Attorneys in the State of Louisiana, in their official capacities, | ) ) ) ) ) CLASS ACTION ) JURY DEMANDED ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

_____)

## Introduction

1.     Across the state of Louisiana, people with records of arrests, dismissed charges, acquittals, and old convictions face barriers to obtaining employment, finding housing, and participating in economic and civic life.  The State recognizes the irrationality of these barriers for years-old offenses, providing legal process for such people to expunge record events so as to lessen the burden that these obstacles impose.  Despite the clear intention of the state expungement statutes, however, the Attorney General, Clerks of Court, and

1

District Attorneys throughout the state apply the law in such a way that allows only the most well-off Louisianans to benefit from expungement.

2.   Defendants charge $550 *per record event* for expungement and provide no process for waiver on account of indigence.   These exorbitant fees leave thousands of indigent Louisianans unable to obtain jobs solely because of their inability to pay fees to expunge years-old records.

3.   For Louisianans who have ever been convicted of or pled guilty to even a misdemeanor, or who have participated in pretrial diversion, any subsequent record event costs at least $550 to expunge from their record.   $550 stands as an impenetrable obstacle for many Louisianans, including those who seek expungements because they have trouble obtaining employment in the first place.   Poor Louisianans face a terrible catch-22: they cannot afford to expunge their records because they cannot obtain stable, well-paying employment, but they cannot obtain stable, well-paying employment because of their criminal records.

4.   That burden only increases for Louisianans who have more than one event to expunge, like the named Plaintiffs and many members of the putative class.   The $550 fee covers only the record events of one day, in one parish.   Individuals who need to expunge more than one event must pay $550 or more for *each* event they need to expunge, which may run costs into the thousands of dollars — and put expungement even further out of reach.

5.   Louisiana itself recognizes that the exorbitant expungement fee often prevents people from seeking expungements for which they would otherwise qualify.   State law incorporates a fee waiver — but rather than basing the waiver on ability to pay, the law provides it only for people who have no prior convictions.   Moreover, Defendants have applied the waiver provision to block fee waivers even for Louisianans who have been convicted of or pled

guilty to low-level misdemeanors, or who have never been convicted of anything at all but successfully participated in pretrial diversion.  That application directly undermines the purpose of the expungement statutes and ensures that those most in need of expungements are least likely to get them.

## Nature of the Action

6.    Defendants offer the possibility of expungements to Louisianans with qualifying expungable events but effectively provide them only to people who can afford to pay a high fee.  By basing access to the process on wealth-status, Defendants discriminate against indigent individuals.  Plaintiffs seek declaratory and injunctive relief prohibiting such conditioning of the availability of expungements on someone's ability to pay.

7.    Under Louisiana law, individuals with certain types of qualifying criminal records may petition the Clerk of Court of a Parish to expunge those records, and the total cost of obtaining such an expungement may not exceed $550.  *See* La. Code Crim. P. § 983(A).[1]

8.    Under Louisiana law, the most serious offenses are never eligible for expungement.  More minor offenses can be expunged after ten years for felonies and after five years for misdemeanors, but only for those wealthy enough to pay the non-waivable fees.[2]  In other words, the state prices out indigent individuals from expunging even the comparatively minor offenses that the state has deemed appropriate for expungement.

---

[1] People seeking to expunge records of driving under the influence ("DUI") must pay additional fees.  *See* La. Code Crim. P. § 984(C).

[2] For misdemeanor convictions, the seeker must wait five years before seeking an expungement. *See* La Code Crim. P. § 977(A)(1).  For qualifying felony convictions, the seeker must wait ten years before seeking an expungement.  *See* La. Code Crim. P. § 978(A)(2).

9.     Doug Welborn, the Clerk of East Baton Rouge Parish, like the Defendant Clerks in other Parishes in Louisiana, charges the full $550 allowed under state law and parcels out the fees owed to Hillar Moore, the District Attorney in East Baton Rouge Parish.

10.    This is a prohibitively high fee that puts expungements financially out of reach to the very people who need them the most.

11.    Many people with criminal records that include expungable events that prevent them from obtaining stable employment face a catch-22 of not being able to afford the expungement petition because they do not have jobs, but not being able to get a job because they have a criminal record they cannot afford to expunge.

12.    The state's expungement law recognizes that people with certain qualifying record events — which include arrests not resulting in charges and charges not resulting in convictions — face enormous obstacles to obtaining employment, housing, and other services essential to stable lives.

13.    Although the Louisiana expungement statutes merely specify a maximum fee, the named Defendants and the Defendant class members throughout the State apply the law without allowing a waiver of the $550 fee based on indigence or financial need on the part of the person seeking the expungement.

14.    The statutes, as enforced by the named Defendants and others across the State, do, however, allow for some fee waivers on the basis of the underlying event that the individual seeking the expungement wishes to expunge.  That is, individuals may be eligible for fee waivers if they wish to expunge an arrest, acquittal, or dismissal of charges.  *See* La. Code Crim. P. § 983(F).  This allowance has some key exceptions; among them, those individuals must also have had no prior felony convictions — even if that felony is not part

of the expungement petition — nor any pending felony charges.  *See* La. Code Crim. P. § 988.

15.  Beyond statutory eligibility, Doug Welborn, the Clerk of East Baton Rouge Parish, like the other members of the Defendant classes, also discretionarily declines fee waivers based on the input of Hillar Moore, the District Attorney of East Baton Rouge Parish or Jeff Landry, the Attorney General, depending on who handled the underlying prosecution.  That input is entirely unconnected to an assessment of the individual's ability to pay the $550 fee.

16.  Defendant District Attorneys often discretionarily deny fee waivers to individuals who have previously been convicted not of felonies, but of misdemeanors.  Defendants also often deny fee waivers to individuals who have participated in diversion programs that never resulted in a conviction at all.

17.  Under the application of the law by named Defendants and the Defendant class members throughout the state, the lack of any mechanism to consider an expungement seeker's ability to pay, failure to offer fee waivers on the basis of indigence despite offering them on other bases, and overall irrational application of Louisiana state expungement law severely impedes individuals who would qualify for expungements but cannot afford them from earning a living, providing for families, maintaining stable housing, and otherwise securing their own and their families' wellbeing.

18.  Because Defendants provide expungements only to those who have the ability to pay, Doug Welborn and Hillar Moore of East Baton Rouge Parish, Attorney General Jeff Landry, and the other members of Defendant classes' enforcement of Louisiana law amounts to wealth-based discrimination in violation of fundamental fairness, procedural due process, and equal protection rights.

19.    Because Defendants deny expungements to anyone who cannot afford the fee, Defendants' enforcement of the expungement statutes impermissibly discriminates among Louisianans on the basis of their financial means, limiting the availability of expungements to Louisianans with the resources to afford them.

20.    Defendants' discrimination against indigent petitioners in provision of expungements violates equal protection rights because such discrimination is not narrowly tailored to a compelling government interest. Such discrimination also actively undermines the purpose of the statute it purports to enforce and apply and is therefore also irrational under any standard of review.

21.    Defendants also discriminate on the basis of a petitioner's prior history. Because Defendants deny expungements to anyone who cannot afford the high fee and does not qualify for a fee waiver, based on a past conviction, two indigent individuals arrested together for the same alleged offense but not subsequently charged face different fee structures to expunge those arrests from their record depending on their prior criminal history.  That is, one with a long-ago conviction would have to pay $550 to expunge the later arrest, while the other without any such prior conviction would qualify for a fee waiver.  Defendants' discrimination in provision of expungement violates equal protection because such discrimination serves no purpose at all under the laws of the State and is irrational under any standard of review.

22.    Because unexpunged criminal record events impede the ability of Plaintiffs to obtain employment, housing, and otherwise build stable financial and family lives, without being narrowly tailored to a compelling government interest, the expungement regime violates due process rights.

23.   Because Defendants deprive indigent people otherwise qualified for expungements, but who cannot afford them, of a clean criminal record, without any meaningful process that would determine their ability to pay the upfront fee, while simultaneously explicitly requiring or implicitly compelling both public and private employers to run criminal record checks on potential employees, Defendants deprive Plaintiffs of fundamental interests in violation of procedural due process rights.[3]

24.   By and through their attorneys, and on behalf of themselves and all others similarly situated, E.B., D.W., and T.R., seek declaratory and injunctive relief against Defendants in their official capacities as Clerk of East Baton Rouge Parish, District Attorney of East Baton Rouge Parish, and other similarly situated Defendant class members, and Attorney General Landry, to end this unconstitutional practice that harms anyone who would qualify for an expungement but cannot afford to petition for it.

## Jurisdiction and Venue

25.   This civil rights action arises under 42 U.S.C. § 1983, 28 U.S.C. § 2201, *et seq.*, and the Fourteenth Amendment to the U.S. Constitution.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

26.   Venue is proper pursuant to 28 U.S.C. § 1391.

## Parties

### I.   Plaintiffs

27.   Plaintiff E.B. is a 40-year-old woman living in East Baton Rouge Parish, Louisiana.  E.B. pled guilty in 2011 to possession of drugs, a felony.  Prior to that, in 2008, E.B. pled guilty

---

[3] Those interests include, but are not limited to, a liberty interest in being free of collateral consequences of criminal record events — including events for which no Court has made an adjudication of guilt, at all.

7

to possession of drugs, a misdemeanor. In 2016, E.B. was arrested for possession of stolen things, but charges were ultimately dropped. E.B. also has prior arrests in 2002 for which the disposition remains unclear even after having obtained a State Police background check.

28. E.B. makes $4 per hour, plus tips, as a waitress. E.B. lives paycheck to paycheck and has no savings.

29. E.B. cannot afford the $1,650 fee to expunge the qualifying record events from 2008, 2011, and 2016. If the 2002 arrest events qualify for expungement, E.B. cannot afford the $2,200 total to expunge that in addition to the 2008, 2011, and 2016 events.

30. Plaintiff D.W. is a 49-year-old woman living in Orleans Parish, Louisiana. D.W. pled guilty in 1996 to theft of goods worth between $300 and $500, a felony. Subsequent to that, in 2001, D.W. pled guilty to having falsified an employment application to a health care facility, because she had failed to disclose the prior felony conviction. D.W. also has two other arrests for which she was never charged or charges were filed and dismissed. Because she has no non-expungeable violent felony convictions, all of these events qualify for expungement, at a total cost of $2,200.

31. D.W. earns $10 per hour working at a hotel. D.W. lives paycheck to paycheck and has no savings.

32. D.W. cannot afford the $2,200 fee to expunge all the qualifying events and clear her record.

33. Plaintiff T.R. is a 55-year-old resident of Orleans Parish, Louisiana. T.R. was convicted of a felony more than 30 years ago that has made him ineligible for statutory fee waivers on the basis of La. Code Crim. P. § 983(F).

34.    Plaintiff T.R. has nine total expungeable events.  Many of those events include arrests that did not lead to charges or charges that did not lead to conviction.  Because T.R. does not qualify for a fee waiver, the total cost of expunging his record would be $4,950.

35.    T.R. lives on $775 per month in disability payments, plus occasional additional money from small side jobs.  His bills exceed his income on a month to month basis.

36.    T.R. cannot afford the $4,950 cost of expunging his record.

**II.    Defendants**

37.    Defendant Jeff Landry is the Attorney General of Louisiana.  As part of his role as Attorney General, Mr. Landry has a statutory responsibility to oversee all the District Attorneys in the State.  *See* La. Code Crim. P. § 62.

38.    The Attorney General oversees Hillar Moore, the District Attorney of East Baton Rouge Parish and the other District Attorney class members in enforcement of the expungement statutes.

39.    Defendant Landry participates directly in the expungement process for many individuals seeking expungements.  Wherever a District Attorney cannot prosecute an individual because of a conflict of interest, recuses from a matter, and turns the case over to the Attorney General for prosecution, the Attorney General also undertakes the discretionary review of the expungement application at the end of the criminal process.  The Attorney General takes conflict cases, including expungement of events related to those conflict cases, on a regular basis.

40.    Defendant Landry's role also includes authority "to intervene in any proceeding, as he may deem necessary for the assertion or protection of the rights and interests of the state."  La. Code Crim. P. § 62(B).

41.     Defendant Landry also oversees the State Police, which includes the Bureau of Criminal Identification and Information.  The Bureau receives $250 for each expungement petition it helps process, paid by the petitioner and transmitted by the Clerk of the relevant Parish.

42.     Defendant Doug Welborn is the Clerk of Court of East Baton Rouge Parish, Louisiana. The Clerk of Court collects the $550 fee from each expungement seeker who does not have a fee waiver, and keeps $200 of that fee.  The Clerk also pays the State of Louisiana, through the Bureau of Criminal Identification and Information, $250 out of that fee for each fee-paying expungement seeker.

43.     Defendant Welborn also has primary responsibility for processing each of the expungement motions filed in East Baton Rouge Parish.

44.     As a class, Defendant Parish Clerks in every parish across the state collect the maximum fees for each expungement seeker, and they transmit portions of the fee to the relevant District Attorney, the Bureau of Criminal Identification and Information, and the relevant Sheriff.  They each also keep $200 per expungement seeker.

45.     Hillar Moore, on behalf of East Baton Rouge Parish, enforces Louisiana state law providing for record expungements in a manner that unconstitutionally burdens some individuals with criminal records merely because they cannot afford the fees the Parish and the State requires them to pay for expungements.

46.     As a class, Defendant District Attorneys in every judicial district across the state make decisions about when, and under what circumstances, to waive fees of expungement seekers under the available statutory bases (which do not include indigence).  Despite Mr. Landry's oversight over their enforcement of the laws, those District Attorneys apply the

state law inconsistently, in ways including (but not limited to) how they treat individuals seeking expungements who have previously utilized pretrial diversion.

47.    Officials of all the other Parishes in Louisiana, the District Attorneys and Clerks of which comprise the Defendant classes, enforce Louisiana state law providing for record expungements in a similar fashion.

48.    At all times relevant to the events, acts, and/or omissions alleged in this Complaint, Defendants have acted under color of state law, pursuant to their authority and responsibilities as officials of the State of Louisiana and their respective Parishes.

49.    All Defendants in this matter have sworn to uphold the United States Constitution, including the Fourteenth Amendment.

50.    Regardless of damages or individual liability, Defendants in their official capacities may be enjoined from enforcing unconstitutional state laws and from implementing state laws in an unconstitutional manner.  *See Ex parte Young*, 209 U.S. 123 (1908).

## Factual Background

51.    The State of Louisiana provides for "expungement of certain arrest and conviction records" under state law.  *See* La. Code Crim. P. § 971 *et seq.*  Those circumstances include records of arrests for felony or misdemeanor offenses that do not lead to convictions, *see* La. Code Crim. P. § 976(A), records of misdemeanor convictions (and associated arrests), *see* La. Code Crim. P. § 977(A),[4] and records of certain non-violent felony convictions (and associated arrests), *see* La. Code Crim. P. § 978(A).[5]

---

[4] For misdemeanor convictions, the seeker must wait five years before seeking an expungement. *See* La Code Crim. P. § 977(A)(1).

[5] For qualifying felony convictions, the seeker must wait ten years before seeking an expungement. *See* La. Code Crim. P. § 978(A)(2).

52.   The State of Louisiana does this because the State recognizes that "the inability to obtain an expungement can prevent certain individuals from obtaining gainful employment."  La. Code Crim. P. § 971(4).  The State similarly recognizes that by providing opportunities for individuals to obtain employment, the statewide expungement regime improves community reentry and serves public safety interests.  *See id.* at § 971(6).

53.   The Justice Reinvestment Act of 2017 also recognizes the importance of expungements.  *See, e.g.*, Louisiana's Justice Reinvestment Reforms Practitioners' Guide, Louisiana Department of Public Safety & Corrections, pg. 4-5.[6]  By allowing people to return home from sentences early and investing associated correctional savings into reentry services, the State sought to reduce its prison population while supporting returning citizens on the outside.

54.   Expunged records are confidential and outside of the public record, but they may be made available to law enforcement entities for investigative or other lawful purposes, *see* La. Code Crim. P. § 973(A), or to various licensure boards and bodies, *see* id. at §973(B), ensuring that any state interests remain protected even as to expunged records.

55.   To seek an expungement, an individual files a motion to expunge a record with the Clerk of Court of the Parish in which the underlying event the individual wishes to expunge occurred.

56.   The Clerk of Court "shall serve the notice of the motion of expungement" upon the District Attorney of the Parish in question[7]; the Louisiana Bureau of Criminal Identification and

---

[6] *Available at*:
https://www.lasc.org/documents/LA_Practitioners_Guide_Justice_Reinvestment_Reforms_FINAL_2017-8-1.pdf

[7] Or, if the Attorney General handled the underlying prosecution, the Attorney General.

Information; and the law enforcement agency involved in the underlying arrest.  *See* La. Code Crim. P. § 979.

57.   Any one of those served entities may object to the motion.  *See* La. Code Crim. P. § 980. In situations in which none of the served entities object to the motion, the expungement seeker may dispense with the contradictory hearing that would follow such objections, "and the court shall grant the motion to expunge the record if the court determines that the mover is entitled to the expungement in accordance with law."  *See* La. Code Crim. P. § 980(F).

58.   Expungements in Louisiana cost $550.  *See* La. Code Crim. P. § 983.  If the expungement is for an event involving driving under the influence ("DUI"), it costs $600.  *See* La. Code Crim. P. § 984(C).[8]

59.   Defendants charge the highest expungement fee in the United States.

60.   Of the $550 fee for non-DUI expungements, the Clerk of Court collects the entire nonrefundable fee at the time of the motion and "shall immediately" direct portions of the money to the appropriate entities.  La. Code Crim. P. § 983(D)(1)–(2).  The Louisiana Bureau of Criminal Identification and Information receives $250; the relevant Sheriff receives $50; and the relevant District Attorney receives $50.  *See* La. Code Crim. P. § 983(B)(1)–(3).  The Clerk keeps $200.

61.   Louisiana law, as applied by Defendants, does not provide an exception to the payment of the $550 fee on the basis of the indigence of the expungement seeker.

62.   Current law includes a reference to the general *in forma pauperis* ("IFP") provision in the states' civil procedure code, *see* La. Code Crim. P. § 983(H), *see also* La. Code Civ. Pro.

---

[8] This can increase to $650 for some seeking to expunge DUI events, based on a set-aside for the Office of Motor Vehicles.

Art. 5181, *et seq.* Although that provision allows for individuals whose income stands at or below 125% of the poverty level not to pay civil filing fees upfront, that provision has not provided relief for expungement seekers in practice.

63. For one thing, that IFP status determination, if granted, still only covers the $200 portion of the fee that goes to the Clerk. As the expungement statutes are applied by Defendants as a matter of policy, even an IFP waiver does not cover the fees that go to the Sheriff, District Attorney, or State Police.

64. For another thing, the IFP general provision presumes that a party who loses an adversarial proceeding in a Louisiana state court would still have to pay costs at the end of litigation, while a party who wins may have those costs paid by the opponent. That general practice has no clear application in the context of a non-adversarial, quasi-criminal proceeding such as an individual seeking an expungement.

65. Confusion over this provision has deterred individuals who might qualify for it from filing for expungements using the provision. And, in any case, many individuals who would not qualify as indigent under the state civil procedure rule still cannot afford the onerous expungement fees — which far exceed civil filing fees. This is especially true for people who need more than one record event expunged.

66. Aside from the general IFP process with the shortcomings and confusion described above, Louisiana law as applied by Defendants includes no inquiry into an expungement seeker's ability to pay the $550 fee.

67. Louisiana law as applied by Defendants makes no exception for indigence, even though the statute itself recognizes that expungements serve the purpose of allowing the individuals seeking the expungement to obtain employment — and earn money.

14

68. Louisiana law does, however, allow exceptions to the $550 fee.  At the discretion of the Defendant class of District Attorneys and the Attorney General, individuals seeking to expunge an event for which he or she was acquitted (including of lesser included offenses), or was never charged in the first place, and the individual has no felony convictions or pending felony charges, may seek a fee waiver.  *See* La. Code Crim. P. § 983(F).

69. This exception, however, has been interpreted by Defendant District Attorneys — who must sign off on its application — as unavailable to individuals who participated in pretrial diversion programs or who have misdemeanor convictions.  *See* La. Code Crim. P. § 983(F)(3).[9]

70. Because the District Attorney must sign off on the fee waiver, this application of law by Defendant District Attorneys effectively limits the availability even of that fee waiver provision.

71. To the extent it is granted, the exception is also applied inconsistently, often at the whim of the District Attorney of the Parish in which the individual seeks an expungement.

72. The statutory unavailability of that exception to people with any felony convictions, even ones in the distant past, means that many people cannot even seek expungements of arrests that were not even charged or otherwise prosecuted, without paying the $550 fee.

73. In one expungement filing, individuals may seek to expunge records "in relation to a single arrest event," La. Code Crim. P. § 972(4).  While a single arrest event may include an arrest and an associated charge, it does not include other criminal record events which may

---

[9] Even when the District Attorney does grant a fee waiver, the State Police still insist on its portion of the fee, in violation of the State expungement statutes.

qualify for expungement.  People seeking to expunge records relating to multiple arrest events must file multiple expungement motions and pay the associated fee for each.

74. Many people who qualify under state law for expungement of their criminal records cannot afford to pursue those expungements because of indigence.

75. Availability of record expungement for anyone who cannot qualify for the non-indigence exception turns directly on the financial status of that individual.

76. People who might most benefit — those who have multiple expungement-qualifying events on their record that could be removed — face the highest hurdles, in the form of reduced access to the non-indigence exception and in a higher total cost for multiple motions.

77. People who cannot afford expungements for which they would otherwise qualify face additional barriers to employment because of Louisiana State law and regulations requiring certain types of employers to run criminal record checks on potential employees. *See, e.g.*, La. Rev. Stat. 27:28(A)(2) (concerning employment at casinos).

78. Many public employers are required to undertake criminal record checks of potential employees as a matter of state law or regulations.  Some private employers are as well.

79. Louisiana employers also routinely perform background checks because other provisions of state law include numerous explicit incentives to do so.  State law insulates both public and private employers from liability in many suits alleging negligent hiring or failure to supervise if the employers have run criminal records checks on their employees.  La. Rev. Stat. 23:291(D).

80. The same statute re-imposes potential liability if the employer discovers that a potential employee has been convicted of one of a long list of specifically enumerated crimes.  La. Rev. Stat. 23:291(E).  So not only does the statute ensure that most employers will run

background checks, it also ensures that employers will hesitate to hire someone with particular types of record events, including many that would qualify for expungement if the individual could afford expungement.

81.   Individuals with expungeable criminal records who seek employment at companies or agencies required by state law to perform criminal records checks but who cannot afford the high fees to expunge their qualifying events, such as D.W., are effectively prevented from such employment by the Defendants' application of Louisiana state law.

82.   As a result, many individuals with criminal records that they cannot afford to expunge turn to under-the-table employment or temporary employment agencies, each of which impede their ability to earn steady incomes, find stable housing, and otherwise reenter civic life.

83.   At least one of the named Plaintiffs has had to resort to such precarious employment.

84.   Precarious employment, such as under-the-table or temporary agency employment, often offers lower rates of pay; irregular hours that change substantially on a week-to-week basis; changing locations and correspondingly different commutes from an individual's home; hours that interfere with an individual's ability to engage in parenting or other family responsibilities; and an inability to earn benefits associated with other types of employment.

85.   Individuals with criminal records that they cannot afford to expunge may also turn to smaller, less financially successful businesses that do not run criminal record checks, but that also pay lower wages and that may offer fewer hours of employment per week.

86.   Louisiana state laws and regulations also impose other burdens on people with criminal record events.  Louisiana imposes the highest number of burdens on people with criminal records of any state in the country, including modified disqualification to Temporary

Assistance for Needy Families (TANF), limits on available occupational and processional licenses, and bars to certain types of civic engagement. *See* Allyson Fredericksen & Desiree Omli, Jobs After Jail: Ending the Prison to Poverty Pipeline, 12, 14, 22 (2016).[10]

87.    Many individuals have parenting and family responsibilities that unstable housing or inconsistent employment impede.

88.    All of the named Plaintiffs have suffered these particular harms.

89.    Such long-term burdens on their employment, housing, and civic prospects (often referred to as collateral consequences of criminal record events) therefore fall on individuals who cannot afford expungements, while otherwise similarly-situated individuals of greater wealth and means can pay to avoid them.

**I.    The Plaintiffs**

90.    Plaintiff E.B. earns $4 per hour, plus tips, as a waitress in East Baton Rouge Parish.  E.B. also cares for two minor children and lives paycheck to paycheck.  She also has no savings.

91.    Because of her record, E.B. has faced barriers to obtaining employment and housing.  She has previously applied for better-paying jobs and been turned down because of her criminal record.  Just this year, Lyft and Hamilton Relay have rejected her employment applications on that basis.

92.    E.B. cannot obtain more stable housing for herself and her children because she cannot save enough money for a security deposit and rent in Baton Rouge at her current job.

93.    E.B.'s earnings compared to her expenses, as well as her lack of savings, make the $1,650 or $2,200 cost of expunging her qualifying record events prohibitively expensive.

---

[10] *Available at*
https://jobgap2013.files.wordpress.com/2016/02/ajs_job_after_jail_report_final_pdf.pdf.

94.    Plaintiff D.W. earns $10 per hour at a motel outside of New Orleans, lives with her 23-
       year-old son in subsidized Section 8 housing, and lives paycheck to paycheck.

95.    Because of her record, D.W. has faced barriers as to both her employment and her housing.
       She has previously applied for better-paying jobs and been declined because of her criminal
       record.  At one point, CVS hired her and put her through training while her background
       check was pending, only to fire her once the check revealed the above-described events on
       her criminal record.

96.    D.W. has specifically sought employment at companies, including Harrah's Casino in New
       Orleans, which run background checks in conformance with Louisiana State law and
       regulations requiring background checks for workers at entities covered by the Louisiana
       Gaming Control Board.

97.    D.W. has been living in her current housing for years and believes she would not be able
       to rent a new place from a landlord who would run a background check.

98.    Plaintiff T.R. currently receives disability payments amounting to $775 per month.  He
       also receives SNAP benefits, commonly referred to as food stamps, because of his
       indigence.  His monthly expenses exceed his income.  He has no savings and cannot build
       any savings.

99.    Although he presently receives disability payments, T.R. has previously applied for
       employment at various companies that utilize criminal record background checks to screen
       potential workers, including Children's Hospital and Uber.  Despite the fact that T.R.
       would lose his disability benefits if he gets a job, he would prefer earning a wage to getting
       assistance payments.  He has not been able to obtain employment because of his criminal

record.  His employment prospects would improve substantially if the qualifying events on his record were expunged.

## II.    Application of Law

100.    As applied by the Defendants, the statutory scheme violates multiple Plaintiffs' constitutional rights: their right to equal protection of the laws; their right to substantive due process; and their right to procedural due process.

101.    Plaintiffs have a Fourteenth Amendment right to be free from discrimination in the criminal justice system on the basis of their personal wealth.

102.    Named plaintiffs and other members of the putative class would qualify for one or more expungements if they could afford the $550 fee for each expungeable event.

103.    As Defendants apply the law, two Louisianans with the exact same qualifying criminal record events, who have the same right to an expungement for which they qualify, are treated unequally because Defendants condition the practical availability of those expungements on their ability to pay the high fee.

104.    Defendants make expungements available for individuals who can pay a high fee and not for people with the same criminal record events who cannot.

105.    The treatment of Plaintiffs and other Class Members stems solely from the unconstitutional interpretation and application of Louisiana state law by Defendants and Defendants' practice of discriminating against individuals based on indigence in imposing collateral consequences on Louisianans.

106.    Defendants' application of the law serves no rational purpose, because Defendants have no interest in denying people expungements for which they would otherwise qualify solely based on their inability to pay a fee.

107. Moreover, because Defendants' application of the State's expungement regime prevents people of limited financial means with expungeable events from obtaining employment, Defendants' application of the law directly undermines the very purposes the State enacted it to serve.

108. Because Defendants' application of the State's expungement regime prevents people of limited financial means with expungeable events from protecting themselves from employment and housing discrimination, Defendants' application of the expungement statutes directly undermines the purposes of the Justice Reinvestment Act of 2017 and the State's investment in reentry services.

109. Defendants recognize that recording many of these criminal record events impedes individuals' ability to obtain gainful employment, among other things.

110. Even if Defendants did have evidence that such criminal record events have informational value, the regime that Defendants have constructed does not vindicate that interest. By conditioning expungements on ability to pay and inconsistently granting expungements to otherwise similarly-situated individuals depending on their financial status, Defendants ensure that individuals suffer collateral consequences at no benefit to the State.

111. The fees charged in Louisiana are not necessary for the provisions of expungements; Louisiana's fee is the highest in the country. Many states provide expungements for nominal fees or no fee at all — including some states that automatically provide record expungements to qualifying individuals without even a motion, petition, or other active step.[11] Many states provide fee waivers on the basis of indigence, recognizing the

---

[11] *See, e.g.*, Conn. Gen. Stat. § 54-142a (automatically erasing records upon acquittal or dismissed charges); 18 Pa. C.S. § 9122(a)-(b) (providing for expungements where there has been no disposition within 18 months of arrest, or in cases involving violations of underage drinking) and

importance of the underlying interest (and the benefits to the State's own interests in granting expungements to qualifying individuals).[12]  Louisiana does neither.

112.    Plaintiffs also have a Fourteenth Amendment right to be free from irrational discrimination in the criminal justice system on the basis of their criminal record.

113.    Named plaintiffs and other members of the putative class would qualify for one or more expungements, at no cost, if they had not previously been convicted of or pled guilty to a misdemeanor or felony or participated in a diversion program.

114.    In addition to and independent of Defendant's failure to provide a waiver for indigence to expunge any record event, Defendants also refuse waivers for non-conviction events based on prior history.

115.    As Defendants apply the law, two indigent Louisianans seeking to expunge the exact same arrests not leading to charges, or charges not leading to convictions, are treated unequally based upon whether those individuals have particular other criminal record events in their past.  Defendants condition the fee for an indigent individual to expunge an arrest or charge record on that individual's prior record.

116.    Defendants' application of the law serves no rational purpose, because Defendants have no interest in denying people expungements for arrests that do not lead to charges or charges that do not lead to convictions, based upon indigence and Defendants' impression of those individuals' prior criminal record.

---

§ 9122.2 (providing for automatic expungement of summary convictions, misdemeanors of the second and third degrees, and charges resulting in final disposition other than conviction); S.C. Code Ann. 17-22-910 (expunging many non-conviction events automatically); 13 V.S.A. § 7603(a) (providing for automatic expungements of non-conviction events in Vermont).

[12] *See, e.g.*, In. St. 35-38-9-8(d) (providing for reduction or waiver due to indigence); N.C.G.S. § 15A-145.5(g) (exempting fee for indigent petitioner); O.R.C. § 2953.32(C)(3) (same, in Ohio).

117. Because the fee is assessed separately and cumulatively for each expungeable event, there is no rational basis to deny waiver of the fee for a particular event solely because of another event whose fee will not be waived.

118. Defendants have no reason to believe that the criminal record events in question — arrests that never lead to charges, charges that are never prosecuted, or prosecutions that result in acquittal — have any informational value.

119. Plaintiffs have a procedural due process right to be free from deprivations of protected interests undertaken without due process of law.

120. Even if Plaintiffs do not have a standalone liberty interest in obtaining record expungements for which they qualify but cannot afford, Louisiana state law ensures that Defendants' actions impose a greater burden on them than mere stigma.

121. Louisiana law requires some employers to run criminal record checks on prospective employees.

122. Louisiana law encourages other employers to run criminal record checks on prospective employees, out of real or perceived fear of potential liability in the event they fail to do so.

123. Those employers subsequently deny employment to Plaintiffs and putative class members, on the basis of the record events that qualify for expungements, but Plaintiffs cannot expunge because of Defendants' application of law.

124. When state law itself requires or encourages public or private employers to run criminal record checks, and Defendants' application of law inhibits individuals from being able to expunge items that will show up in those checks, that amounts to a state-imposed burden on an individual's right or status under state law.

125. Defendants' application of law amounts to a denial of procedural due process.

126.    Plaintiffs have a fundamental fairness due process right to access key criminal process steps without regard to their wealth and financial means.  *See, e.g.*, *Griffin v. Illinois*, 351 U.S. 12, 19 (1956); *Bearden v. Georgia*, 461 U.S. 660, 673 (1983).

127.    Defendants have a monopoly on the expungement process.  Plaintiffs have no way of obtaining expungements except through Defendants.

128.    Because of Defendants' monopoly on the expungement process, Plaintiffs' fundamental liberty interests are even more pronounced.

129.    Key criminal process steps implicate the fundamental liberty interests protected by the due process clause.

130.    Expungements, which help an individual recover from the ongoing consequences of his or her conviction, stand as one of the final key criminal process steps in the regime codified by the State of Louisiana.

131.    States cannot deprive an individual of those due process rights if, through no fault of his or her own, he or she cannot pay the amount of money the state charges.

132.    Defendants' application of the law burdens Plaintiffs' due process rights because record expungement is a key criminal process step, and Defendants currently condition the availability of that criminal process step on Plaintiffs' financial means.

**Class Action Allegations**

133.    Named Plaintiffs E.B., D.W. and T.R. bring this action, on behalf of themselves and all others similarly situated, to assert the claims alleged herein on a common basis.

134.    Plaintiffs bring this action against the Attorney General and two Defendant classes comprised of the District Attorneys and Parish Clerks of the state of Louisiana, who apply the law similarly and burden the Plaintiff class and subclass members in common ways.

135.    A class action is the only practicable means by which the named Plaintiff and unknown class members can challenge the Defendants' application of Louisiana state law and wealth-based denial of expungements.

136.    This class action satisfies the commonality, typicality, numerosity, and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure, as to both the proposed Plaintiff class and the proposed Defendant classes.

137.    Plaintiffs propose one plaintiff class seeking declaratory and injunctive relief.  The class is defined as: All Louisianans who have or will have criminal record events that qualify for expungement and who cannot afford the costs and fees Defendants require for those expungements.

138.    Plaintiffs also propose one plaintiff subclass seeking declaratory and injunctive relief.  The subclass is defined as: All Louisianans who have or will have non-conviction criminal record events but who cannot obtain a statutory fee waiver to expunge those events because of a prior conviction.

139.    Plaintiffs propose two defendant classes, against whom that relief might be ordered.  The first is: All the Clerks of the Parishes of the State of Louisiana who enforce and apply the Louisiana expungement statutes, including collecting expungement fees at filing, without waiving fees for expungement seekers who cannot afford to pay them.  Plaintiffs propose Doug Welborn, the Clerk of East Baton Rouge Parish, as the class representative for the class of Clerks. The second is: All the District Attorneys of the Parishes of the State of Louisiana who enforce and apply the Louisiana expungement statutes without waiving fees for expungement seekers who cannot afford to pay them.  Plaintiffs propose Hillar Moore,

the District Attorney of East Baton Rouge Parish, as the class representative for the class of District Attorneys.

## I.    Numerosity

### a.    Numerosity of Plaintiffs

140.    Class members are so numerous as to make joinder impracticable.

141.    The class and subclass likely number in the tens of thousands. As many as 1.5 million Louisianans have criminal record events, and approximately one in five Louisianans live below the poverty line. Even assuming that Louisianans above and below the poverty line have criminal record events at the same rate, that suggests that as many as 300,000 Louisianans could have record events that they cannot afford to expunge because of the high fees.

142.    Even non-violent felony convictions number more than 150,000 per year. *See* 2017 Crime in Louisiana, Louisiana Statistical Analysis Center (May 2019). Even assuming that only one-fifth of people with non-violent felony convictions are indigent, even one year's worth of people wishing to expunge non-violent felony record events would exceed 30,000.

143.    The subclass exceeds the numerosity requirement as well, because most members of the main class will also fall within the subclass. The only people who would qualify for the class but not the subclass are those whose contact with law enforcement has resulted in only convictions. The subclass, which includes all three named Plaintiffs, will exceed 40 people.

### b.    Numerosity of Defendants

144.    The Defendant class will each meet the numerosity requirement as well. Each Parish has a Clerk, and Louisiana has 64 Parishes. Louisiana has 42 judicial districts, each of which

has a District Attorney.  Although this would satisfy the numerosity requirement even for plaintiff classes, numerosity requirements for defendant classes allow for smaller numbers to meet the threshold.

145.    Joining the members of the two proposed Defendant classes individually would impose burdens on the Court and the parties and be impracticable.  Proposed class members are dispersed geographically across the state, will see turnover during the course of the litigation because they will participate only in their official capacities, and the class tool would help unify the litigation seeking to enjoin all of them in the same way.

**II.    Commonality**

**a.    Commonality of Plaintiffs**

146.    Plaintiffs' claims contain many common contentions capable of classwide resolution.

147.    Because Plaintiffs present a constitutional challenge to an application of state law by government officials, Plaintiffs' claims pose a number of common legal questions and rely on a number of common facts.

148.    Because Plaintiffs seek only declaratory and injunctive relief, this case requires no individualized inquiries into the personal harms suffered by each Plaintiff as part of an assessment of possible damages.

149.    Common questions of law include: whether individuals who cannot afford the fees charged by Defendants may therefore have their access to expungements blocked; whether Defendants have government interests in charging the fees that they do for expungements; if Defendants do have government interest, whether those interests stand up to constitutional scrutiny; and what standard of scrutiny the Court should apply to Plaintiffs' claims.

150. As to the Plaintiff subclass in particular, Plaintiffs claims pose the common question as to whether the Defendants have any government interest at all in limiting access to expungements of non-conviction record events by charging a fee; and, if they do, whether that interest stands up to scrutiny in light of their providing waivers for such expungements in some circumstances.

### b.    Commonality of Defendants

151. Proposed Defendant Clerks and District Attorneys apply the same state law in the same ways, and burden indigent expungement seekers' rights in the same ways as a result.

152. Proposed Defendant classes meet the commonality requirement for the same reason that the Plaintiff class and subclass do — the claims involve common legal questions whose resolution will affect all the proposed Defendant class members in the same way.

153. Those questions include whether Defendants may charge prohibitively high fees to indigent expungement seekers if those fees effectively bar the seekers from expunging qualifying criminal record events; whether the Defendants have government interests in charging the fees that they do for expungements; if they do, whether those interests stand up to constitutional scrutiny; and what standard of scrutiny the Court should use to assess Plaintiffs' claims and Defendants' defenses.

## III.    Typicality

### a.    Typicality of Named Plaintiffs

154. Named Plaintiffs present constitutional claims that are typical of the claims of the class because they have suffered the same injury to their employment and housing prospects by virtue of Defendants' application of law blocking their access to expungements.

155. Named Plaintiffs share all key characteristics with their proposed fellow class members, because they present the same legal theories and seek the same relief. They simply want to obtain expungements of qualifying criminal record events for which they cannot afford the fee because of their own indigence and Defendants' application of state law.

156. Any relief that would address the named Plaintiffs' injuries and claims would apply similarly to other proposed class members.

157. Because the named Plaintiffs want to expunge non-conviction record events in addition to conviction record events, their claims are typical of those of the members of the subclass, as well.

### b.    Typicality of Named Defendants

158. The proposed representatives of the Defendant class of Clerks and class of District Attorneys meet the typicality requirement because they will assert the same defenses that the other Defendant class members would.

159. Because the proposed representatives enforce the same expungement laws in the same fashion by not providing indigence exceptions, their interests are so interrelated that the representatives will protect the interests of the other members.

160. The proposed representatives' interests will not become adverse to the interests of the other class members during the course of the litigation, because Plaintiffs seek only injunctive relief, and the same injunctive relief as to all Defendants.

## IV.    Adequacy

### a.    Adequacy of Named Plaintiffs and Class Counsel

161. Named Plaintiffs will fairly and adequately represent the interests of the proposed class and the proposed subclass because they have qualified counsel who stand ready to advise

them how best to vindicate their interests and the shared interests of their proposed expungement seeking fellow class and subclass members.

162. Named Plaintiffs have interests in harmony with those of the rest of the proposed class and subclass, and Named Plaintiffs seek common injunctive relief rather than individual damages that might separate their interests from those other members during the course of the litigation. Named Plaintiffs seek no relief that would not also benefit other class members.

163. Plaintiffs' counsel offer broad expertise in criminal justice class actions generally and regarding the Louisiana expungement regime affecting people with criminal records in Louisiana in particular.

   **b.    Adequacy of Named Defendants**

164. Defendants Welborn and Moore have qualified counsel and resources and will adequately represent the interests of the other Defendants.

165. In addition, Defendant Landry, as the Attorney General for the state, will serve as qualified counsel with adequate resources and will adequately represent the interests of the other Defendants.

166. Plaintiffs have not sought weak or atypical named Defendants; Plaintiffs have not sought named Defendants with different factual circumstances than the members of the proposed Defendant classes as a whole.

167. Proposed Defendant representatives do not have interests adverse to other Defendant class members. Because common legal issues apply to all of the members of the Defendant classes, Defendants Welborn and Moore defending their own interests will adequately protect the other class members.

168.   In any event, because Plaintiffs have sued about the constitutionality of a state law and have also sued Defendant Landry, the Attorney General may well represent all the Defendants in defending the application of that law regardless of the named Defendant class representatives' resources.

## V.    Rule 23(b)(2)

### a.    Suitability of Plaintiff Class and Subclass Under Rule 23(b)(2)

169.   Plaintiffs have proposed exactly the type of class and subclass regularly certified by Courts pursuant to Rule 23(b)(2).

170.   Plaintiffs seek declaratory relief allowing them to obtain expungements, without accompanying damages, in a suit about Defendants' application of the expungement statutes that can be enjoined or declared unlawful only as to all of the Plaintiff class and subclass members or as to none of them.

171.   Plaintiffs have suffered harms in essentially the same way, seek injunctive relief rather than monetary damages, and seek specific injunctive relief that would redress their injuries.

### b.    Suitability of Defendant Classes Under Rule 23(b)(2)

172.   Courts routinely certify Defendant classes when Plaintiffs sue to enjoin a statewide application of the same law by local officials dispersed across a state and when they seek the same injunctive relief against all of those officials.

173.   Defendant classes under Rule 23(b)(2) address situations where final injunctive or declaratory relief with respect to the defendant class or classes as a whole would appropriately resolve the action and would be preferable to a multiplicity of similar actions.

174.   Such a device makes even more sense when Plaintiffs contest the application of a state statute applied locally to obtain relief across the state.

175. Plaintiffs seek no damages against any of the proposed Defendant class members and ask solely for injunctive relief allowing them to obtain expungements in different Parishes spread across the state.  Failing to enter relief against all proposed Defendant class members would impede some Plaintiff class and subclass members' ability to vindicate their constitutional rights.

### Claims for Relief

Count One (Equal Protection Based on Wealth-Status): Defendants Violate Plaintiff's Equal Protection Rights by Denying Them Equal Treatment to Similarly Situated Louisianans Based on Their Indigence

176. Plaintiffs incorporate each of the preceding paragraphs by reference.

177. The Fourteenth Amendment's Due Process Clause prohibits discrimination between similarly situated individuals by state actors.

178. Defendants impermissibly distinguish between Louisianans who can afford the high upfront cost of expungements and those who cannot.  Defendants exclude Louisianans in the putative class from petitioning for expungements by applying state law in a manner that requires such a high upfront fee.

179. Defendants' application of state law is irrational because not only does it not serve a legitimate government purpose, but it also actively undermines the stated purpose of the expungement laws as enacted by the legislature.

Count Two (Equal Protection Based on Prior History): Defendants Violate Plaintiff's Equal Protection Rights by Denying Them Equal Treatment to Similarly Situated Louisianans Based on Their Prior Convictions or Use of Diversion Processes

180. Plaintiffs incorporate each of the preceding paragraphs by reference.

181. The Fourteenth Amendment's Due Process Clause prohibits discrimination between similarly situated individuals by state actors.

182. Defendants impermissibly distinguish between Louisianans who have the exact same criminal record events depending on the prior character of their criminal record. Defendants exclude Louisianans in the putative class from petitioning for expungements by applying state law in a manner that allows expungement fee waivers to individuals who are arrested for, charged with, or acquitted of particular criminal allegations, based on their prior criminal history, while denying fee waivers to similarly situated Louisianans who are arrested for, charged with, or acquitted of the exact same criminal allegations, based on other prior criminal history.

183. Defendants' application of state law is irrational because not only does it not serve a legitimate government purpose — among other reasons, arrests, charges, dismissals, and acquittals involve no adjudication or admission of guilt in any fashion — but it also actively undermines the stated purpose of the expungement laws as enacted by the legislature.

### Count Three (Fundamental Fairness Due Process): Defendants Violate Plaintiffs' Due Process Rights by Denying Them Access to a Key Part of the Criminal Process Because They Cannot Afford the Fee

184. Plaintiffs incorporate each of the preceding paragraphs by reference.

185. Expungements of criminal records stand as one of the last criminal process steps that individuals face when suspected of criminal activity in violation of state law.

186. While the State may not be required as a matter of law to have an expungement provision at all, it may not condition the availability of expungements on the wealth of an individual who would otherwise qualify.

187. Longstanding Supreme Court precedent disallows states from denying individuals access even to discretionary parts of criminal process.

188. Expungement, as part of the criminal process, implicates the fundamental liberty interest and fundamental fairness to parties in the criminal process covered by the constitution's due process protections.

189. Defendants imposing a high cost as a precondition to expungement violates due process.

**Count Four (Procedural Due Process): Defendants Violate Plaintiffs' Procedural Due Process Rights by Denying Them Due Process of Law While Depriving Them of a Liberty Interest**

190. Plaintiffs incorporate each of the preceding paragraphs by reference.

191. Plaintiffs have a protected liberty interest because they face both the stigma of unexpunged criminal records and various state law consequences of having unexpunged criminal records.

192. Plaintiffs' good name and integrity are impugned by having arrests, charges, dismissals, and acquittals on their records, even though such criminal record events come with no adjudication of guilt.

193. When the State requires public or private employers to undertake a criminal background check of potential employees — including Plaintiffs — that amounts to a state-imposed burden on the individual's right or status under state law.

194. When the State implicitly encourages public or private employers to undertake a criminal background check of potential employees — including Plaintiffs — by imposing a real or perceived concern about liability if such employers do not run background checks, that also amounts to a state-imposed burden on the individual's right or status under state law.

195. By failing to provide a way for indigent individuals to expunge qualifying record events, while simultaneously requiring employers to check for those record events, Defendants deny Plaintiffs procedural due process in violation of law.

**<u>Prayer for Relief</u>**

WHEREFORE, Plaintiffs request that the Court issues the following relief:

196. A declaratory judgment that the Defendants' current application of Louisiana expungement law violates the constitution of the United States;

197. An order and judgment enjoining Defendants, and all subordinates, agents, employees, representatives, and any others acting on their behalf, from conditioning the availability of criminal record expungements on the ability of an indigent expungement seeker to pay the $550 fee.

198. An order and judgment enjoining Defendants, and all subordinates, agents, employees, representatives, and any others acting on their behalf, from conditioning the availability of non-conviction record event expungements on the ability of an expungement seeker with some other conviction record event to pay any fee at all.

199. An order and judgment declaring that Louisiana state expungement statutes, to comply with the constitution, incorporate an ability-to-pay inquiry, and a fee waiver for those who qualify to apply for an expungement but cannot afford to pay the fee.

200. An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other relief this Court deems proper.

Respectfully submitted,

/s/ Phil Telfeyan*
Phil Telfeyan, DC Bar #1029157
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org

/s/ Jim Davy*
Jim Davy, PA Bar #321631
Equal Justice Under Law
400 7th St. NW, Suite 602

Washington, D.C. 20004
(202) 505-3599
jdavy@equaljusticeunderlaw.org

/s/ Kelly Orians
Kelly E. Orians, La. Bar # 36920
The First 72+
2915 Perdido St.
New Orleans, LA 70119
(303) 946-5375
Kelly@first72plus.org

(*pro hac vice* application forthcoming)