## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**E.B., D.W., and T.R., on behalf of**
**themselves and others similarly situated**

**CIVIL ACTION**

**VERSUS**

**NO. 19-862-JWD-SDJ**

**JEFF LANDRY, in his**
**official capacity, ET AL.**

## RULING AND ORDER

This matter comes before the Court on two Motions to Dismiss. The first *Motion to Dismiss* (Doc. 26) was filed by defendants Doug Welborn ("Welborn") and Hillar Moore ("Moore"). The second *Motion to Dismiss or for a More Definite Statement* (Doc. 27) was filed by defendant Jeff Landry (the "Attorney General"). Plaintiffs E.B., D.W., and T.R. (collectively "Plaintiffs") filed a consolidated opposition to these motions (Doc. 37), and Defendants filed a consolidated reply (Doc. 41). The Attorney General and Plaintiffs filed supplemental notices of authority. (Docs. 52, 54.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motions are granted in part and denied in part. Specifically, the motions are granted in that all claims are dismissed for lack of subject matter jurisdiction. However, Plaintiffs will be given leave to amend to cure the deficiencies of the operative complaint.

### I.    Background

#### A.  Overview

This is a putative class action with both proposed class plaintiffs and class defendants. Plaintiffs are three individuals that qualify for an expungement based on their criminal history but

cannot afford the imposed fees.[1] Defendants are: (1) Jeff Landry, sued in his official capacity as

the Attorney General of Louisiana; (2) Doug Welborn, sued in his official capacity as the Clerk of

Court of East Baton Rouge Parish; and (3) Hillar Moore, sued in his official capacity as District

Attorney for East Baton Rouge Parish. (*Compl.* ¶¶ 37–50, Doc. 1.)

Plaintiffs bring this suit on behalf of themselves and all others similarly situated for

declaratory and injunctive relief related to the application of Louisiana's expungement laws as

they are applied by Defendants and the proposed defendants' class. (*Id.* ¶ 24.)

Plaintiffs begin the operative complaint by declaring:

Across the state of Louisiana, people with records of arrests, dismissed charges, acquittals, and old convictions face barriers to obtaining employment, finding housing, and participating in economic and civic life. The State recognizes the irrationality of these barriers for years-old offenses, providing legal process for such people to expunge record events so as to lessen the burden that these obstacles impose. Despite the clear intention of the state expungement statutes, however, the Attorney General, Clerks of Court, and District Attorneys throughout the state apply the law in such a way that allows only the most well-off Louisianans to benefit from expungement.

Defendants charge $550 per record event for expungement and provide no process for waiver on account of indigence. These exorbitant fees leave thousands of indigent Louisianans unable to obtain jobs solely because of their inability to pay fees to expunge years-old records.

(*Id.* ¶¶ 1–2.)

Plaintiffs acknowledge that state law incorporates a fee waiver; however, they allege that

Defendants apply the law in such a way as to "block fee waivers even for Louisianans who have

been convicted of or pled guilty to low-level misdemeanors, or who have never been convicted of

anything at all but successfully participated in pretrial diversions." (*Id.* ¶ 5.)  According to

Plaintiffs, Defendants' application of Louisiana law directly undermines the purpose of the

---

[1] E.B. claims it would cost between $1,650 and $2,200 for expungement of items on his record. (Doc. 1-1 at 1.) D.W. claims $2,200 in expungement costs. (Doc. 1-2 at 1.) T.R. represents expungement costs of $4,950. (Doc. 1-3 at 1.)

expungement statutes and ensures that those most in need of an expungement cannot afford to get one. (*Id.*)

As such, Plaintiffs filed this suit alleging that Defendants are violating their rights under the Equal Protection Clause by denying them equal treatment afforded similarly situated Louisianans based on their indigence, prior convictions, or use of pretrial diversion processes. (*Id.* ¶¶ 19–21.) Likewise, Plaintiffs allege that Defendants are violating their rights under the Due Process Clause by denying them a liberty interest in their good name and integrity, as well as denying them access to a key part of criminal process because they cannot afford the $550 expungement fee. (*Id.* ¶¶ 22–23.) Plaintiffs seek "declaratory and injunctive relief prohibiting such conditioning of the availability of expungements on someone's ability to pay." (*Id.* ¶ 6.)

### B. Factual Allegations

Plaintiffs allege that Defendants' application of the law makes expungements prohibitively unaffordable because they impose the maximum fee allowed and make no exceptions for indigent citizens. (*Compl.* ¶ 13, Doc. 1.)

As to the Attorney General, Plaintiffs allege that he "participates directly in the expungement process for many individuals" because he (1) undertakes the discretionary review of expungement applications at the end of the criminal process and (2) handles cases when a District Attorney recuses himself due to a conflict of interest and turns the case over to him for prosecution, which occurs "on a regular basis." (*Id.* ¶ 39.) The Attorney General's role also includes the "authority 'to intervene in any proceeding, as he may deem necessary for the assertion or protection of the rights and interests of the state.' " (*Id.* ¶ 40 (citing La. Code Crim. P. art. 62(B)).)

Additionally, the Attorney General has the statutory responsibility to oversee all District Attorneys in Louisiana, including Hillar Moore. (*Id.* ¶¶ 37–38.) He likewise oversees the State Police, which "includes the Bureau of Criminal Identification and Information." (*Id.* ¶ 41.)

As to Defendant Welborn, Plaintiffs allege that he has "primary responsibility for processing each of the expungement motions filed in East Baton Rouge Parish." (*Id.* ¶ 43.) Like all other Clerks of Court in Louisiana, Welborn purportedly charges the full $550 allowed under state law and parcels out the fees owed to the relevant entities, including to Moore as the District Attorney of East Baton Rouge Parish. (*Id.* ¶¶ 9, 42, 44.)

Plaintiffs also represent that Welborn discretionarily declines fee waivers based on the input of Moore or the Attorney General, depending on who handled the underlying prosecution. (*Id.* ¶ 15.) According to the *Complaint*, "That input is entirely unconnected to an assessment of the individual's ability to pay the $550 fee." (*Id.*)

As to Defendant Moore, Plaintiffs allege that he enforces Louisiana's expungement laws "in a manner that unconstitutionally burdens some individuals with criminal records merely because they cannot afford the fees the Parish and the State require them to pay for expungements." (*Id.* ¶ 45.)

Plaintiffs further aver:

> Because Defendants provide expungements only to those who have the ability to pay, Doug Welborn and Hillar Moore of East Baton Rouge Parish, Attorney General Jeff Landry, and the other members of Defendant classes' enforcement of Louisiana law amounts to wealth-based discrimination in violation of fundamental fairness, procedural due process, and equal protection rights.

(*Id.* ¶ 18.)

Plaintiffs then allege that Defendants application of Louisiana's expungement law has effectively prevented them from getting an expungement, which in turn precludes them from

obtaining gainful employment and limits their housing options. (*Id.* ¶ 17.)  Plaintiffs cite to specific instances in which each of them has been denied employment or otherwise terminated as a result of a criminal background check.[2]

### C.  Louisiana's Expungement Law

#### 1. Purpose of Expungement

Louisiana law provides a legal process for its citizens with criminal histories to expunge "certain arrest and conviction records," removing them from the public record. (*Compl.* ¶ 51, Doc. 1 (quoting La. Code Crim. P. art. 971 *et seq.*).)

In enacting the expungement statutes, the Louisiana legislature recognizes that the "inability to obtain an expungement can prevent certain individuals from obtaining gainful employment." (*Id.* ¶ 52 (quoting La. Code Crim. P. art. 971(4)).) The legislature also recognizes that by providing opportunities for individuals to obtain employment, the expungement regime improves community reentry, reduces "prison population[s] while supporting returning citizens on the outside[]", and serves public safety interests. (*Id.* ¶¶ 52, 53 (citing La. Code Crim. P. art. 971(6)).)

Once a criminal record has been expunged, it generally becomes confidential and is removed from public access. (*Id.* ¶ 54.)  However, an expunged record may still remain accessible to law enforcement entities for investigative or other lawful purposes or to various licensure boards ensuring that state interests remain protected, even as to expunged records. (*Id.* (citing La. Code Crim. P. art. 973(A), (B)).)

---

[2] In 2019, E.B. applied to work at Hamilton Relay and Lyft, but was denied because of his criminal background. (Doc. 1-1 at 1); D.W.'s criminal history precluded employment at Harrah's Casino, Loews Hotel, and Maison St. Charles. In 2019, D.W. was hired by CVS, only to be terminated "during training when they got the results of [D.W.'s] background check." (Doc. 1-2 at 1); T.R. has been denied employment with Uber, Woldenberg Village Nursing Home, and Courtyard by Marriott-Gretna because of his criminal record. (Doc. 1-3 at 1).

## 2. Process

Events that qualify for an expungement include records of arrests for felony or misdemeanor offenses that do not lead to convictions, records of misdemeanor convictions (and associated arrests),[3] and records of certain non-violent felony convictions (and associated arrests).[4] (*Compl.* ¶ 51, Doc. 1.) To seek an expungement of these events, "an individual files a motion to expunge a record with the Clerk of Court of the Parish in which the underlying event the individual wishes to expunge occurred." (*Id.* ¶ 55.)

Once a motion to expunge has been filed, the Clerk of Court must serve notice of the motion upon the District Attorney of the Parish in question (or the Attorney General); the Louisiana Bureau of Criminal Identification and Information; and the law enforcement agency involved in the underlying arrest. (*Id.* ¶ 56 (citing La. Code Crim. P. art. 979); *see also id.* at n.7.)

Any of the above listed entities may object to the motion. (*Id.* ¶ 57 (citing La. Code Crim. P. art. 980).) However, if none of these entities object, "the expungement seeker may dispense with the contradictory hearing that would follow such objections, 'and the court shall grant the motion to expunge the record if the court determines that the mover is entitled to the expungement in accordance with law.' " (*Id.* (quoting La. Code Crim. P. art. 980(F)).)

## 3. Expungement Fees

Expungements in Louisiana cost $550 per record event. (*Compl.* ¶ 58, Doc. 1 (citing La. Code Crim. P. art. 983).) "If the expungement is for an event involving driving under the influence ("DUI"), it costs $600." (*Id.* (citing La. Code Crim. P. art. 984(C)).) According to Plaintiffs, these are the highest expungement fees in the United States. (*Id.* ¶ 59.)

---

[3] For misdemeanor convictions, the seeker must wait five years before seeking an expungement. *See* La. Code Crim. P. art. 977(A)(1).
[4] For qualifying felony convictions, the seeker must wait ten years before seeking an expungement. *See* La. Code Crim. P. art. 978(A)(2).

Of the $550 fee for non-DUI expungements, the Clerk of Court collects the entire nonrefundable fee at the time the motion is filed and "shall immediately" direct portions of the money to the appropriate entities. (*Id.* ¶ 60 (quoting La. Code Crim. P. art. 983(D)(1)–(2)).)  Of that $550 fee: the Louisiana Bureau of Criminal Identification and Information receives $250; the relevant Sheriff receives $50; the relevant District Attorney receives $50; and the Clerk of Court keeps $200. (*Id*. (citing La. Code Crim. P. art. 983(B)(1)–(3)).)

The expungement article challenged by Plaintiffs provides in full:

**Art. 983. Costs of expungement of a record; fees; collection; exemptions; disbursements**

A. Except as provided for in Articles 894 and 984, the total cost to obtain a court order expunging a record *shall not exceed five hundred fifty dollars*. Payment may be made by United States postal money orders or money orders issued by any state or national bank or by checks issued by a law firm or an attorney.

B. The nonrefundable processing fees for a court order expunging a record shall be as follows:

(1) The *Louisiana Bureau of Criminal Identification and Information* may charge a processing fee of *two hundred fifty dollars* for the expungement of any record of arrest when ordered to do so by the court in compliance with the provisions of this Title.

(2) The *sheriff* may charge a processing fee of *fifty dollars* for the expungement of any record of arrest when ordered to do so by the court in compliance with the provisions of this Title.

(3) The *district attorney* may charge a processing fee of *fifty dollars* for the expungement of any record of arrest when ordered to do so by the court in compliance with the provisions of this Title.

(4) The *clerk of court* may charge a processing fee not to exceed *two hundred dollars* to cover the clerk's costs of the expungement.

C. The clerk of court shall collect all processing fees at the time the motion for expungement is filed.

D. (1) The clerk shall immediately direct the collected processing fee provided for in Subparagraph (B)(1) of this Article to the Louisiana Bureau of Criminal

Identification and Information, and the processing fee amount shall be deposited immediately upon receipt into the Criminal Identification and Information Fund.

(2) The clerk shall immediately direct the collected processing fees provided for in Subparagraphs (B)(2) and (3) of this Article to the sheriff and the district attorney, and the processing fee amount shall be remitted immediately upon receipt in equal proportions to the office of the district attorney and the sheriff's general fund.

E. The processing fees provided for by this Article are nonrefundable and shall not be returned even if the court does not grant the motion for expungement.

F. An applicant for the expungement of a record shall not be required to pay any fee to the clerk of court, the Louisiana Bureau of Criminal Identification and Information, sheriff, the district attorney, or any other agency to obtain or execute an order of a court of competent jurisdiction to expunge the arrest from the individual's arrest record if a certification obtained from the district attorney is presented to the clerk of court which verifies that the applicant has no felony convictions and no pending felony charges under a bill of information or indictment and at least one of the following applies:

(1) The applicant was acquitted, after trial, of all charges derived from the arrest, including any lesser and included offense.

(2) The district attorney consents, and the case against the applicant was dismissed or the district attorney declined to prosecute the case prior to the time limitations prescribed in Chapter 1 of Title XVII of this Code, and the applicant did not participate in a pretrial diversion program.

(3) The applicant was arrested and was not prosecuted within the time limitations prescribed in Chapter 1 of Title XVII of this Code and did not participate in a pretrial diversion program.

(4) The applicant was determined to be factually innocent and entitled to compensation for a wrongful conviction pursuant to the provisions of R.S. 15:572.8.

(5) Concerning the arrest record which the applicant seeks to expunge, the applicant was determined by the district attorney to be a victim of a violation of R.S. 14:67.3 (unauthorized use of "access card"), a violation of R.S. 14:67.16 (identity theft), a violation of R.S. 14:70.4 (access device fraud), or a violation of any other crime which involves the unlawful use of the identity or personal information of the applicant.

G. Notwithstanding any other provision of law to the contrary, a juvenile who has successfully completed any juvenile drug court program operated by a court of this

state shall be exempt from payment of the processing fees otherwise authorized by this Article.

H. If an application for an expungement of a record includes two or more offenses arising out of the same arrest, including misdemeanors, felonies, or both, the applicant shall be required to pay only one fee as provided for by this Article.

I. Notwithstanding any provision of law to the contrary, an applicant for the expungement of a record, other than as provided in Paragraphs F and G of this Article, may proceed in forma pauperis in accordance with the provisions of Code of Civil Procedure Article 5181 et seq.

La. Code Crim. P. art. 983 (emphasis added).

### 4. *In Forma Pauperis*

Plaintiffs then represent that Louisiana's expungement law, as applied by Defendants, "does not provide an exception to the payment of the $550 fee on the basis of the indigence of the expungement seeker." (*Compl.* ¶ 61, Doc. 1.)

Plaintiffs acknowledge that the challenged expungement statute references the general *in forma pauperis* ("IFP") provision in the Louisiana Code of Civil Procedure. (*Id.* ¶ 62.) However, Plaintiffs allege, "that provision has not provided relief for expungement seekers in practice." (*Id.*) Plaintiffs aver that:

> For one thing, that IFP status determination, if granted, still only covers the $200 portion of the fee that goes to the Clerk. As the expungement statutes are applied by Defendants as a matter of policy, even an IFP waiver does not cover the fees that go to the Sheriff, District Attorney, or State Police.

> For another thing, the IFP general provision presumes that a party who loses an adversarial proceeding in a Louisiana state court would still have to pay costs at the end of litigation, while a party who wins may have those costs paid by the opponent. That general practice has no clear application in the context of a non-adversarial, quasi-criminal proceeding such as an individual seeking an expungement.

> Confusion over this provision has deterred individuals who might qualify for it from filing for expungements using the provision. And, in any case, many individuals who would not qualify as indigent under the state civil procedure rule still cannot afford the onerous expungement fees — which far exceed civil filing

fees. This is especially true for people who need more than one record event expunged.

(*Id.* ¶¶ 63–65.)

Aside from these issues, Plaintiffs again allege that as Defendants apply Louisiana law, no inquiry is made into an expungement seeker's ability to pay nor are any exceptions made on account of an expungement seeker's indigence. (*Id.* ¶¶ 66–67.) Plaintiffs then point out that Louisiana law does allow exceptions to the $550 fee as set out in La. Code Crim. P. art. 983(F) below:

> F. An applicant for the expungement of a record shall not be required to pay any fee to the clerk of court, the Louisiana Bureau of Criminal Identification and Information, sheriff, the district attorney, or any other agency to obtain or execute an order of a court of competent jurisdiction to expunge the arrest from the individual's arrest record if a certification obtained from the district attorney is presented to the clerk of court which verifies that the applicant has no felony convictions and no pending felony charges under a bill of information or indictment and at least one of the following applies:
>
> (1) The applicant was acquitted, after trial, of all charges derived from the arrest, including any lesser and included offense.
>
> (2) The district attorney consents, and the case against the applicant was dismissed or the district attorney declined to prosecute the case prior to the time limitations prescribed in Chapter 1 of Title XVII of this Code, and the applicant did not participate in a pretrial diversion program.
>
> (3) The applicant was arrested and was not prosecuted within the time limitations prescribed in Chapter 1 of Title XVII of this Code and did not participate in a pretrial diversion program.
>
> (4) The applicant was determined to be factually innocent and entitled to compensation for a wrongful conviction pursuant to the provisions of R.S. 15:572.8.
>
> (5) Concerning the arrest record which the applicant seeks to expunge, the applicant was determined by the district attorney to be a victim of a violation of R.S. 14:67.3 (unauthorized use of "access card"), a violation of R.S. 14:67.16 (identity theft), a violation of R.S. 14:70.4 (access device fraud), or a violation of any other crime which involves the unlawful use of the identity or personal information of the applicant.

La. Code Crim. P. art. 983(F).

However, this exception has been interpreted by District Attorneys, who must sign off on its application, as unavailable to individuals who have misdemeanor convictions or who participated in pretrial diversion programs. (*Id.* ¶ 69 (citing La. Code Crim. P. art. 983(F)(3)).) "Because the District Attorney must sign off on the fee waiver, this application of law by Defendant District Attorneys effectively limits the availability even of that fee waiver provision." (*Id.* ¶ 70.) Additionally, to the extent that a fee waiver is granted, it is done so inconsistently, "often at the whim of the District Attorney of the Parish in which the individual seeks an expungement." (*Id.* ¶ 71.)

Further, because a fee waiver is not available under the statute to anyone with a prior felony conviction, "many people cannot even seek expungements of arrests that were not even charged or otherwise prosecuted, without paying the $550 fee." (*Id.* ¶ 72.)

Moreover, "[p]eople seeking to expunge records relating to multiple arrest events must file multiple expungement motions and pay the associated fee for each." (*Id.* ¶ 73 (citing La. Code Crim. P. art. 972(4)).) Thus, according to Plaintiffs, many people who "qualify for expungement of their criminal records cannot afford to pursue those expungements because of indigence." (*Id.* ¶ 74.) Plaintiffs aver:

> Availability of record expungement for anyone who cannot qualify for the non-indigence exception turns directly on the financial status of that individual.
>
> People who might most benefit — those who have multiple expungement-qualifying events on their record that could be removed — face the highest hurdles, in the form of reduced access to the non-indigence exception and in a higher total cost for multiple motions.

(*Id.* ¶¶ 75–76.)

11

### D. Class Claims

The *Complaint* proposes the following plaintiff classes:

> . . . one plaintiff class seeking declaratory and injunctive relief. The class is defined as: All Louisianans who have or will have criminal record events that qualify for expungement and who cannot afford the costs and fees Defendants require for those expungements.

> . . . one plaintiff subclass seeking declaratory and injunctive relief. The subclass is defined as: All Louisianans who have or will have non-conviction criminal record events but who cannot obtain a statutory fee waiver to expunge those events because of a prior conviction.

(*Compl.* ¶¶ 137–138, Doc. 1.) Plaintiffs likewise propose the following defendant classes:

> The first is: All the Clerks of the Parishes of the State of Louisiana who enforce and apply the Louisiana expungement statutes, including collecting expungement fees at filing, without waiving fees for expungement seekers who cannot afford to pay them. Plaintiffs propose Doug Welborn, the Clerk of East Baton Rouge Parish, as the class representative for the class of Clerks.

> The second is: All the District Attorneys of the Parishes of the State of Louisiana who enforce and apply the Louisiana expungement statutes without waiving fees for expungement seekers who cannot afford to pay them. Plaintiffs propose Hillar Moore, the District Attorney of East Baton Rouge Parish, as the class representative for the class of District Attorneys.

(*Id.* ¶ 139.) The *Complaint* also sets out facts in support of numerosity, commonality, typicality, and adequacy for both the plaintiff and defendant classes. (*Id.* ¶¶ 140–168.)

### E. Claims and Prayer for Relief

Counts 1 and 2 of the *Complaint* are under 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment. (*Compl.* ¶¶ 176–183, Doc. 1.) As to Count 1, Plaintiffs claim this clause was violated by Defendants denying them equal treatment to similarly situated Louisianans based on their indigence. (*Id.* ¶ 178.) As to Count 2, Plaintiffs allege:

> Defendants impermissibly distinguish between Louisianans who have the exact same criminal record events depending on the prior character of their criminal record. Defendants exclude Louisianans in the putative class from petitioning for expungements by applying state law in a manner that allows expungement fee waivers to individuals who are arrested for, charged with, or acquitted of particular

criminal allegations, based on their prior criminal history, while denying fee waivers to similarly situated Louisianans who are arrested for, charged with, or acquitted of the exact same criminal allegations, based on other prior criminal history.

(*Id.* ¶ 182.)  As to both Counts, Plaintiffs contend "Defendants' application of state law is irrational because not only does it not serve a legitimate government purpose, but it also actively undermines the stated purpose of the expungement laws as enacted by the legislature." (*Id.* ¶¶ 179, 183.)

Counts 3 and 4 are violations of the Due Process Clause of the Fourteenth Amendment. (*Id.* ¶¶ 184–195.)  Count 3 is for Defendants' alleged denial of Plaintiffs' access to a key part of the criminal process by "imposing a high cost as a precondition to expungement." (*Id.* ¶¶ 187, 189.)  As to Count 4, Plaintiffs claims their procedural Due Process rights were violated by Defendants by denying them a liberty interest in their "good name and integrity." (*Id.* ¶ 192.)

Plaintiffs pray for the following relief:

a. A declaratory judgment that Defendants' current application of Louisiana expungement law violates the constitution of the United States.

b. An order and judgment enjoining Defendants, and all subordinates, agents, employees, representatives, and any others acting on their behalf, from conditioning the availability of criminal record expungements on the ability of an indigent expungement seeker to pay the $550 fee.

c. An order and judgment enjoining Defendants, and all subordinates, agents, employees, representatives, and any others acting on their behalf, from conditioning the availability of non-conviction record event expungements on the ability of an expungement seeker with some other conviction record event to pay any fee at all.

d. An order and judgment declaring that Louisiana state expungement statutes, to comply with the constitution, incorporate an ability-to-pay inquiry, and a fee waiver for those who qualify to apply for an expungement but cannot afford to pay the fee.

(*Id.* ¶¶ 196–199.)

Plaintiffs also seek attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and "any other relief this Court deems proper." (*Id.* ¶ 200.)

### F. Procedural History

On December 13, 2019, Plaintiffs filed their class action *Complaint* against Defendants. (Doc. 1.) On January 23, 2020, prior to responsive motions or an answer being filed, a scheduling order being entered, or any discovery being conducted, Plaintiffs filed two motions for class certification. (*See* Docs. 16, 17.) Subsequently, on April 27, 2020, Defendants filed the instant Motions to Dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7) and 23(d)(1), and alternatively, a motion for more definite statement under Rule 12(e). (Docs. 26, 27.) The Attorney General and Plaintiffs also filed supplemental notices of authorities. (Docs. 52, 54.)

On June 30, 2020, this Court denied Plaintiffs' motions for class certification as premature subject to re-filing once the Court ruled on the instant Motions to Dismiss. (*See* Doc. 44.)  On September 28, 2020, the Magistrate Judge granted Plaintiffs' Motion to Proceed Anonymously. (Doc. 45.) In accordance with the Magistrate Judge's Order, Plaintiffs are proceeding publicly under their initials. (Doc. 45 at 13.)

### II. Rule 12(b)(1) Standard

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit has explained:

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States,* 899 F. Supp. 305, 307 (E.D. Tex. 1995).

14

Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). . . .

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## III.    Discussion

The motions to dismiss raise issues as to the Court's subject matter jurisdiction, sovereign immunity, and the applicability of the Tax Injunction Act; they also argue that the *Complaint* fails to state a claim. (Docs. 26, 27.) Specifically, Defendants Welborn and Moore's motion seeks dismissal of Plaintiffs' claims for lack of subject matter jurisdiction under Rule 12(b)(1); failure to state a claim under Rule 12(b)(6); and failure to join required parties under Rule 12(b)(7). (*See* Doc. 26-1.) Defendant Attorney General's motion seeks dismissal of Plaintiffs' claims for lack of subject matter jurisdiction because (a) Plaintiffs do not have standing; (b) Plaintiffs claims are barred by sovereign immunity; and (c) Plaintiffs claims are barred by the Tax Injunction Act. He also argues that Plaintiffs' failed to state a claim under Rule 12(b)(6) and Rule 23(d)(1). Alternatively, the Attorney General seeks a more definite statement under Rule 12(e). (*See* Doc. 27-1.) Because the Court finds that Plaintiffs lack standing to sue, the Court does not address these other grounds for dismissal.

### A.  Parties Arguments

### 1. Defendants Welborn and Moore (Doc. 26-1)

Defendants Welborn and Moore argue that Plaintiffs' claims must be dismissed for lack of standing. Specifically, these Defendants contend that Plaintiffs cannot establish that they have suffered an injury that was caused by their conduct and is redressable by a judgment from this Court.[5]

These Defendants point out that Plaintiffs' injuries are not traceable to them as East Baton Rouge Parish officials. (Doc. 26-1 at 7.) They aver:

> As Plaintiffs allege, "an individual files a motion to expunge a record with the Clerk of Court of *the Parish in which the underlying event . . . occurred*." Compl. ¶ 55 (emphasis added). Each expungable event requires a distinct motion to expunge, *e.g.*, Compl. ¶ 2; *State v. Hayes*, 211 So. 3d 520, 525-26 (La. App. 3d Cir. 2017), and filing that motion in the correct court is of jurisdictional significance, *see State ex rel McRae v. State*, 561 So. 2d 110 (La. 1990). The officials who must respond to the motion — and the officials to whom fees are owed — are tied to the parish where the expungable event occurred. La. Code Crim. Proc. art. 982, 983. Plaintiffs nevertheless fail to plead the parish of their arrest or conviction for any of their purportedly expungable events.

(*Id.*) Thus, because Plaintiffs failed to allege the parish of any of their underlying events, Plaintiffs' alleged injuries are not traceable to them. (*Id.*) For the same reason, these Defendants conclude that there is no basis for inferring that a judgment against them is likely to redress Plaintiffs' alleged injuries. (*Id.* at 8.) According to Welborn and Moore, the facts alleged by Plaintiffs "establish only a 'sheer possibility' that [they] are responsible for Plaintiffs' injuries, which is insufficient to establish standing." (*Id.* (citing *McMahon v. Fenves*, 946 F.3d 266, 270-71 (5th Cir.

---

[5] The Court has omitted Defendants arguments that challenge whether Plaintiffs have established injury in fact. (*See* Doc. 26-1 at 5–7.) As will be discussed below, the test for standing is conjunctive. Because Plaintiffs fail to establish causation and redressability, the Court assumes, without deciding, that Plaintiffs have satisfied the injury-in-fact requirement. *See Williams v. Parker*, 843 F.3d 617, 621 (5th Cir. 2016) ("If the party invoking federal jurisdiction fails to establish any one of injury in fact, causation, or redressability, then federal courts cannot hear the suit."); *Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 656 n.9 (5th Cir. 2019) ("Because the standing test is conjunctive, we assume, without deciding, that [plaintiff] has satisfied Article III's injury-in-fact requirement.").

2020), *cert. denied sub nom*. *McMahon v. Hartzell*, 141 S. Ct. 363, 208 L. Ed. 2d 89 (2020); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 568-69 (plurality); and *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 44 (1976)).)

### 2. Defendant Attorney General (Doc. 27-1)

Defendant Attorney General likewise argues that Plaintiffs failed to establish that they have standing against him. The Attorney General also takes issue with the causation and redressability prongs of the Court's standing inquiry. (Doc. 27-1 at 2–3.)

As to causation, the Attorney General argues that there is no plausible basis for inferring that Plaintiffs' alleged injuries are traceable to him. (*Id*. at 6.)  Plaintiffs do not allege that the Attorney General is in any way involved in their actual or potential expungement application. (*Id*. at 5.) And while Plaintiffs allege that he can prosecute specific cases as a district attorney *ad hoc* when a district attorney has a conflict of interest, Plaintiffs do not allege that he was involved in prosecuting *their* cases. (*Id*. (citing *Compl.* ¶ 39, Doc. 1) (emphasis by Defendant).)

> Plaintiffs instead point to Article 62 of the Louisiana Code of Criminal Procedure as providing the Attorney General with authority to "oversee all the District Attorneys in the State," Compl. ¶ 37, and "to intervene in any proceeding, as he may deem necessary for the assertion or protection of the rights and interests of the state," Compl. ¶ 40. Plaintiffs ignore the *constitutional* limitations on that statutory provision, which a statute cannot extend. *See Kemp v. Stanley*, 204 La. 110 (1943).
>
> …The Louisiana Constitution provides that "a district attorney . . . shall have charge of every criminal prosecution by the state in his district . . . ." La. Const. art. V § 26(B). In contrast, the Attorney General's authority "to institute, prosecute, or intervene in any criminal action" can be exercised only "for cause, when authorized by the court which would have original jurisdiction" over the prosecution. La. Const. art. IV § 8. But Plaintiffs do not allege any court has authorized him to prosecute them.

(*Id*.)

Moreover, the challenged statute and the Complaint do not implicate the Attorney General in charging, collecting, or receiving fees in connection with applications for expungement. "Absent

some direct role by the Attorney General in setting, charging, collecting, or receiving fees, the particular injury or harm complained of by the Plaintiffs is in no sense attributable or linked to the Attorney General, and the second *Lujan* requirement is not met." (*Id.* at 6.) Likewise, the Attorney General concludes that an order against him would not redress Plaintiffs' grievances. (*Id.*).

Lastly, as to Plaintiffs' remaining allegation against the Attorney General—that he "oversees the State Police, which includes the Bureau of Criminal Identification and Information"—the Attorney General argues that it is wrong as a matter of law. (*Id.* at 6 (quoting *Compl.* ¶ 41, Doc. 1).) "The Division of State Police is part of the Department of Public Safety, La. R.S. 40:1372, one of Departments of State government which reports to the Governor, not the Attorney General. La. R.S. 36:403." (*Id.*).

### 3. Plaintiffs' Opposition (Doc. 37)

In opposition, Plaintiffs argue that the Court has subject matter jurisdiction over their suit because they have standing. Plaintiffs aver generally that they meet all three standing requirements because they "want to apply to expunge a past criminal conviction (injury), are prevented from doing so by Defendants' imposition of a non-waivable fee (causation), and through this lawsuit hope to remove a substantial barrier (the non-waivable fee) that prevents them from accessing the expungement process (redressability)." (Doc. 37 at 6–7.)

Plaintiffs then address each element individually and explain why it is met. Specifically, Plaintiffs contend that they meet the injury requirement by (1) having a criminal conviction and (2) being barred from a part of the criminal process. (*Id.* at 7–9.)

Regarding causation, Plaintiffs have alleged that each named Defendant stands in the way of the expungement process by imposing non-waivable fees and denying "even discretionary fee waivers." (*Id.* at 9.)  As to Welborn and Moore, Plaintiffs argue that they charge the statutorily

allowed maximum fee rather than making exceptions for those who cannot afford to pay it. (*Id.*) As to the Attorney General, Plaintiffs allege that he oversees the other defendants in denying fee waivers. (*Id.*) As such, Plaintiffs conclude that they have sufficiently alleged causation.

Plaintiffs then argue that both forms of injury are redressable by a ruling in Plaintiffs' favor. According to Plaintiffs, "an injunction requiring indigency waivers or ability-to-pay considerations would suffice as redress." (*Id.* at 10.)

Lastly, Plaintiffs state "Defendants are correct that the Complaint lacks information about the record events for each Plaintiff." (*Id.* at 44.) Plaintiffs then represent that E.B.'s record events occurred in East Baton Rouge Parish and Livingston Parish; D.W.'s record events are from Orleans Parish and Jefferson Parish; and T.R.'s record events are from Orleans Parish. (*Id.*)

While Plaintiffs do not ask the Court for leave to amend, Plaintiffs explain: "If this Court denies Defendants' 12(b)(1) and 12(b)(6) motions based on their merits, Plaintiffs will amend accordingly to state the parish of the record events." (*Id.*)

Plaintiffs also represent that they would amend their Complaint to "commonly allege that the Attorney General is ultimately responsible, in oversight of every district attorney, for the denials of their expungements." (*Id.*) They would clarify that the Attorney General does not "oversee[] the State Police, which includes the Bureau of Criminal Identification and Information." (*Id.* (quoting *Compl.* ¶ 41, Doc. 1).)

### 4. Defendants' Reply (Doc. 41)

Defendants reiterate that Plaintiffs lack standing. Defendants point out that Plaintiffs do not dispute that their failure to allege the parishes of their convictions or the involvement of Defendants in their prosecutions means their injuries are untied to Defendants. (Doc. 41 at 3.) "That Defendants allegedly injured *someone* is not an allegation that Defendants injured any

Plaintiff" and such traceability is what Article III standing requires. (*Id*.) (emphasis by Defendants).

Defendants then contend that although Plaintiffs suggest they can plead additional facts tying E.B.'s purported injuries to Defendants Welborn and Moore, "Plaintiffs cannot shore up deficiencies in their complaint via their opposition brief." (*Id*. (citing *Mohamed v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 620 n.10 (N.D. Tex. 2017) (gathering cases)).)

Regardless, Defendants represent that Plaintiffs do not identify any additional facts they could plead to tie their alleged injuries to the Attorney General. (*Id*.) According to Defendants, "the only fact alleged by Plaintiffs that even attempts to tie the Attorney General to the denial of fee waivers is that 'Welborn . . . discretionarily declines fee waivers based on the input of . . . Jeff Landry, the Attorney General, based on who handled the underlying prosecution.' " (*Id*. at 4 n.1 (quoting *Compl.* ¶ 15, Doc. 1).)  However, Plaintiffs do not allege in their Complaint or in their opposition that the Attorney General handled any of the underlying prosecutions nor do they indicate what "input" means. (*Id*.)

Additionally, the challenged law confers no responsibility upon the Attorney General. (*Id*. at 3.)  Thus, Defendants conclude that even if the Court were to consider the additional facts included in Plaintiffs' opposition, Plaintiffs still fail to establish they have standing to sue the Attorney General. (*Id*. at 4 n.1.)

### B.  Applicable Law

Article III of the Constitution limits the purview of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement" is that plaintiffs "must establish they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The standing doctrine is a threshold inquiry to adjudication, which defines and limits the role of

the judiciary." *Berry v. LoanCity*, No. 18-888, 2019 WL 2870849, at *4 (M.D. La. July 3, 2019)

(quoting *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 570 F. Supp. 2d 851, 853 (E.D. La.

2008) (citing *McClure v. Ashcroft,* 335 F.3d 404, 408 (5th Cir. 2003))). "It is well settled that

unless a plaintiff has standing, a federal district court lacks subject matter jurisdiction to address

the merits of the case." *Id.* "In the absence of standing, there is no 'case or controversy' between

the plaintiff and defendant which serves as the basis for the exercise of judicial power under Article

III of the constitution." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S. Ct. 2197, 45 L.

Ed. 2d 343 (1975)).

"[T]he irreducible constitutional minimum of standing consists of three elements." *Lujan

v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). "The

plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (citing *Lujan,* 504 U.S. at

560–561)). The party invoking federal jurisdiction bears the burden of proving standing. *Id.* The

court at the pleading stage bases its decision on the allegations of the complaint, and the complaint

must "clearly. . . allege facts demonstrating" each element of standing. *Id.* (citing *Warth*, 422 U.S.

at 518).

The injury must be "an invasion of a legally protected interest" that is "concrete and

particularized" and "actual or imminent, not 'conjectural or hypothetical' " for a court to confer

Article III standing. *Lujan,* 504 U.S. at 560. A plaintiff must show that they face "a palpable present

or future harm, not harm that is 'conjectural or hypothetical.' " *Levy v. Louisiana Dep't of Pub.

Safety & Corr.*, 371 F. Supp. 3d 274, 284 (M.D. La. 2019) (deGravelles, J.) (quoting *Perez v.

Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 183 (5th Cir. 2015)). "An injury that is

21

based on a 'speculative chain of possibilities' does not confer Article III standing." *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S. Ct. 1138, 1150, 185 L. Ed. 2d. 264 (2013)).

There must also be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party." *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42 (1976). And it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61.

### C.  Analysis

Because the test for standing is conjunctive, this Court assumes, without deciding, that Plaintiffs have satisfied Article III's injury-in-fact requirement. *See Inclusive Communities Project,* 946 F.3d at 656, n.9 ("Because the standing test is conjunctive, we assume, without deciding, that [plaintiff] has satisfied Article III's injury-in-fact requirement."); *Williams v. Parker*, 843 F.3d 617, 621 (5th Cir. 2016) ("If the party invoking federal jurisdiction fails to establish any one of injury in fact, causation, or redressability, then federal courts cannot hear the suit.").

Again, Plaintiffs allege two injuries, both of which involve their inability to afford an expungement. Plaintiffs claim that they are injured by having a criminal conviction and by being denied access to a "key part" of the criminal process.[6]  However, these injuries do not provide Plaintiffs with standing to sue these Defendants. Standing requires not only a judicially cognizable injury, but "a causal connection between the injury and the conduct complained of" and a

---

[6] Without addressing the merits of Plaintiffs claims, the Court notes that there is no constitutional right to an expungement of one's criminal record. *See Sealed Appellant v. Sealed Appellee*, 130 F.3d 695, 699 (5th Cir. 1997) ("There is no constitutional basis for a 'right to expungement.' "); *Duke v. White*, 616 F.2d 955, 956 (6th Cir. 1980) (per curiam) ("The right to expungement of state records is not a federal constitutional right."); *see also State v. Doe*, 927 N.W.2d 656, 660 (Iowa), *cert. denied*, 140 S. Ct. 561, 205 L. Ed. 2d 356 (2019).

likelihood "that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. Plaintiffs fail to establish how these Defendants have done anything to personally cause them harm.

As Plaintiffs allege in their Complaint, "an individual files a motion to expunge a record with the Clerk of Court of *the Parish in which the underlying event . . . occurred*." (*Compl.* ¶ 55, Doc. 1 (emphasis added).); *see also* La. Code Crim. P. arts. 982, 983; *State ex rel McRae v. State*, 561 So. 2d 110 (La. 1990). In this case, Plaintiffs failed to allege the parishes in which their underlying arrests or convictions occurred and where they would be eligible for an expungement. In their opposition, Plaintiffs concede that they failed to allege that they were convicted of any crimes in East Baton Rouge Parish. (Doc. 37 at 44.) Thus, as Defendants correctly contend, there is no basis for inferring Plaintiffs' arrests or convictions occurred in East Baton Rouge Parish or that Plaintiffs' alleged injuries are traceable to Defendants Welborn and Moore as East Baton Rouge Parish officials. Likewise, there is no basis for inferring that a judgment against Defendants Welborn and Moore is likely to redress Plaintiffs' alleged injuries.

As to the Attorney General, Plaintiffs also fail to establish standing. In the operative complaint, Plaintiffs do not allege that he had any involvement in prosecuting their cases or is in any way involved in their expungement process. While Plaintiffs cite generally to the Attorney General's broad powers in overseeing all District Attorneys in Louisiana, nothing in the *Complaint* links the Attorney General to any fees charged in connection with an expungement.

Moreover, the challenged statute does not even mention the Attorney General. *See* La. Code Crim. P. art. 983(B)(1)–(4) (stating that the Louisiana Bureau of Criminal Identification and Information, the sheriff, the district attorney, and the clerk of court in the relevant parish may charge an expungement fee.) Thus, Plaintiffs injuries fail for lack of causation as they are not

traceable to the Attorney General. As such, an order against the Attorney General would not redress Plaintiffs' injuries.

When, as here, the plaintiff does not enjoy standing individually, there is no case or controversy, and the suit must be dismissed. *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) ("[I]f the class representative[s] lack[] standing, then there is no Article III suit to begin with[.]" (citing *Rivera v. Wyeth-Ayerest Labs*, 283 F.3d 315, 319 n.6 (5th Cir. 2002)); *see also O'Shea v. Littleton*, 414 U.S. 488 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981)); Fed. R. Civ. P. 12(h)(3). Plaintiffs lack of standing also precludes them from representing a class. *Rivera*, 283 F.3d at 319.

Finally, in the instant motions to dismiss, Defendants assert that this action is also subject to dismissal for lack of subject matter jurisdiction as a result of sovereign immunity and the Tax Injunction Act; for failure to state a claim upon which relief may be granted under Rule 12(b)(6) and Rule 23; and for failure to join required parties under Rule 12(b)(7).

However, where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161; *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014). *See also Guidry v. Elberson,* No. 18-1232, 2019 WL 416500, at *5 (W.D. La. Jan. 10, 2019), *report and recommendation adopted*, No. 18-1232, 2019 WL 406578 (W.D. La. Jan. 31, 2019) (citing same).

Federal courts are duty-bound to examine their own subject-matter jurisdiction and may not proceed where it is apparent that jurisdiction does not exist. *Union Planters Bank Nat'l Ass'n*

24

*v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004). Indeed, "[f]or a court to pronounce upon [the merits] when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). *See also Hotze v. Burwell*, 784 F.3d 984, 991 (5th Cir. 2015) (explaining that if a court determines that a plaintiff lacks standing, that court "do[es] not—indeed, [it] *may* not—reach the merits of the parties' [constitutional] arguments.") (emphasis in original).

Thus, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Williams*, 843 F.3d at 621 ("If the party invoking federal jurisdiction fails to establish any one of injury in fact, causation, or redressability, then federal courts cannot hear the suit.").

Accordingly, this Court's determination that Plaintiffs injury lacks the requisite causation and redressability to establish standing against these Defendants pretermits analysis of any alternative bases for dismissal.

### D.  Leave to Amend

When faced with defective allegations, the Court "should freely give a complainant ... leave to amend[.]" *McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995) (citing Fed. R. Civ. P. 15(a) as grounds for allowing amendment to cure defective allegations in a pleading).

The Fifth Circuit has stated:

> It is provided ... by 28 U.S.C.A. § 1653 that: 'Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.' The theory seems to be that 'if jurisdiction actually existed from the facts at the time when the complaint was filed, even though not properly pleaded, * * * the formal defect in the pleadings did not deprive the Court of jurisdiction at the time when the action was filed, if

such defect was later corrected.' *Stern v. Beer*, 6 Cir., 200 F.2d 794, 795. Cf. *Finn v. American Fire & Causalty Co.*, 5 Cir., 207 F.2d 113, 115.

*Kaufman v. W.U. Tel. Co.*, 224 F.2d 723, 725 (5th Cir. 1955). Section 1653 "like rule 15(a) should be liberally construed." *Miller v. Stanmore*, 636 F.2d 986, 990 (5th Cir. 1981).

Here, even with a liberal interpretation, Plaintiffs jurisdictional allegations are not supported by any facts indicating that Defendants are the cause of their injuries or that their injuries are likely to be redressed by a judgment of this Court and, therefore, are defective. Nevertheless, rather than an outright dismissal of the complaint for failure to allege such facts, the Court should afford Plaintiffs an opportunity to allege or show that their injuries are traceable to conduct by Defendants and are redressable by this Court before their complaint is dismissed on these grounds. Thus, in the absence of any bad faith or undue delay on the part of Plaintiffs or undue prejudice to Defendants, they should be allowed an opportunity to amend. *Foman v. Davis*, 371 U.S. 178, 183 S. Ct. 227, 230 (1962); *see also Reece v. Hamm*, No. 19-669, 2020 WL 5026862, at *9 (M.D. La. Aug. 25, 2020) (deGravelles, J.).

Further, while Plaintiffs have not yet requested an opportunity to amend, the Court nonetheless has inherent power to order such an amendment. *See McClellon*, 66 F.3d at 100 (quoting the magistrate judge's *sua sponte* order requiring an amended complaint). The appropriate remedy when granting a motion to dismiss based on deficient pleadings is to grant the complainant time to amend the complaint; if the complainant fails to do so, then the district court may strike the pleadings or dismiss the case. *McClellon*, 66 F.3d at 103; *Reece,* 2020 WL 5026862, at *9. Thus, in the interest of justice and of orderly procedure, the Court will allow Plaintiffs an opportunity to amend their complaint. *E.g. Neal v. State of Ga.*, 469 F.2d 446, 448-50 (5th Cir. 1972) (reasoning that the trial court should have allowed amendment under 28 U.S.C. § 1653).

The Court does not place restrictions on the amendment or specific instructions as to the scope of the amendment; however, the Court reminds Plaintiffs of Rule 11. Plaintiffs should be thoughtful of not only the good faith grounds of their amendment, but also judicial economy. If Plaintiffs do not believe that they can amend in line with Rule 11, it is incumbent upon Plaintiffs to admit same and avoid a waste of judicial resources.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 26) filed by Defendants Doug Welborn and Hillar Moore and the *Motion to Dismiss or for a More Definite Statement* (Doc. 27) filed by Defendant Jeff Landry are **GRANTED IN PART** and **DENIED IN PART**.

The motions are **GRANTED** in that Plaintiffs' claims against Defendants are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Plaintiffs shall be given twenty-eight (28) days in which to cure the operative complaint of these deficiencies. Failure to do so will result in the dismissal of these claims with prejudice.

In all other respects, the motions are **DENIED WITHOUT PREJUDICE**.

Signed in Baton Rouge, Louisiana, on March 30, 2021.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**