# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**E.B., D.W., and T.R., on behalf of
themselves and all others similarly situated**

**VERSUS**

**JEFF LANDRY, ET AL.**

**CIVIL ACTION**

**NO.   19-862-JWD-SDJ**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss Second Amended Complaint* (Doc. 69) filed by Defendants Welborn, Harris, Morrell, Gegenheimer, Moore, Perrilloux, and Connick (collectively, "Defendants"). Plaintiffs E.B., D.W., and T.R. (collectively, "Plaintiffs") oppose the motion. (Doc. 75.) Defendants filed a reply. (Doc. 80.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is granted in part to the extent that Plaintiffs' claims are dismissed without prejudice for lack of subject-matter jurisdiction. Defendants' motion requesting dismissal for failure to state a claim and for failure to add required parties is denied as moot in light of the Court's grant of the motion under Federal Rule of Civil Procedure 12(b)(1).

## I.    Factual and Procedural Background

This putative class civil rights action arises from a constitutional challenge to Louisiana's expungement laws. The following facts are taken from the Plaintiffs' *Second Amended Complaint* ("Amended Complaint"). (Doc. 60.) They are assumed to be true for purposes of this motion. *Thompson v. City of Waco*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Plaintiffs are three Louisiana residents who want to obtain expungement of their eligible criminal records but cannot afford to pay the associated fees. (*See* Doc. 60 at ¶¶ 27–42.) They

1

commenced this lawsuit on behalf of themselves and others similarly situated on December 13, 2019, seeking declaratory and injunctive relief concerning Louisiana's expungement laws, as they are applied by Defendants and the proposed defendant classes. (*See id.* at ¶¶ 43–72.)[1] Plaintiffs bring this action against the following Defendants in their official capacities: (1) Doug Welborn, the Clerk of Court of East Baton Rouge Parish; (2) Jason Harris, the Clerk of Court of Livingston Parish; (3) Arthur Morrell, the Criminal Clerk of Court of Orleans Parish; (4) Jon Gegenheimer, the Clerk of Court of Jefferson Parish; (5) Hillar Moore, the District Attorney for the Nineteenth Judicial District; (6) Scott Perrilloux, the District Attorney for the Twenty-First Judicial District; (7) Jason Rogers Williams, the District Attorney for Orleans Parish; and (8) Paul Connick, the District Attorney for Jefferson Parish.[2] (*See id.* at ¶¶ 24, 43–74.)

The challenged statute of Louisiana's expungement laws from which Plaintiffs seek relief is Louisiana Code of Criminal Procedure article 983, which sets forth the relevant fees associated with obtaining a court order expunging a record. (*See id.* at ¶¶ 6–24.) Article 983 provides, in pertinent part:

> A. Except as provided for in Articles 894 and 984, the total cost to obtain a court order expunging a record shall not exceed five hundred fifty dollars . . . .
>
> B. The nonrefundable processing fees for a court order expunging a record shall be as follows:

---

[1] The Amended Complaint proposes "one plaintiff class . . . defined as: All Louisianans who have or will have criminal record events that qualify for expungement and who cannot afford the costs and fees Defendants require for those expungements." (Doc. 60 at ¶ 161.) Additionally, Plaintiffs "propose one plaintiff subclass . . . defined as: All Louisianans who have or will have non-conviction criminal record events but who cannot obtain a statutory fee waiver to expunge those events because of a prior conviction." (*Id.* at ¶ 162.)

[2] The Amended Complaint similarly proposes two defendant classes: (1) all Clerks of the Parishes of Louisiana who enforce and apply the expungement statutes and (2) all District Attorneys of the Parishes of Louisiana who enforce and apply the expungement statutes. (*See* Doc. 60 at ¶ 163.) Defendants Welborn, Harris, Morrell, and Gegenheimer are each named as representatives of a defendant class comprised of all Parish Clerks in the State of Louisiana. (*See id.* at ¶¶ 43–56, 70–74.) Defendants Moore, Perrilloux, Williams, and Connick are each named as representatives of a defendant class comprised of all District Attorneys and State Prosecutors in the State of Louisiana. (*See id.* at ¶¶ 57–74.) The Amended Complaint alleges facts in support of numerosity, commonality, typicality, and adequacy for the proposed plaintiff and defendant classes. (*See id.* at ¶¶ 164–91.)

(1) The Louisiana Bureau of Criminal Identification and Information may charge a processing fee of two hundred fifty dollars for the expungement of any record of arrest when ordered to do so by the court in compliance with the provisions of this Title.

(2) The sheriff may charge a processing fee of fifty dollars for the expungement of any record of arrest when ordered to do so by the court in compliance with the provisions of this Title.

(3) The district attorney may charge a processing fee of fifty dollars for the expungement of any record of arrest when ordered to do so by the court in compliance with the provisions of this Title.

(4) The clerk of court may charge a processing fee not to exceed two hundred dollars to cover the clerk's costs of the expungement.

C. The clerk of court shall collect all processing fees at the time the motion for expungement is filed.

La. Code Crim. Proc. art. 983. Article 983 further states: "Notwithstanding any provision of law to the contrary, an applicant for the expungement of a record, other than as provided in Paragraphs F and G of this Article, may proceed in forma pauperis in accordance with the provisions of Code of Civil Procedure Article 5181 et seq." *Id*. art. 983(I).

Plaintiffs acknowledge article 983's reference to the general in forma pauperis ("IFP") provisions in the Louisiana Code of Civil Procedure. (*See* Doc. 60 at ¶ 86.) Plaintiffs maintain, however, that the IFP "provision has not provided relief for expungement seekers in practice." (*Id*.) In support of this assertion, Plaintiffs allege:

For one thing, that IFP status determination, if granted, still only covers the $200 portion of the fee that goes to the Clerk. As the expungement statutes are applied by Defendants as a matter of policy, even an IFP waiver does not cover the fees that go to the Sheriff, District Attorney, or State Police.

For another thing, the IFP general provision presumes that a party who loses an adversarial proceeding in a Louisiana state court would still have to pay costs at the end of litigation, while a party who wins may have those costs paid by the opponent. That general practice has no clear application in the context of a non-adversarial, quasi-criminal proceeding such as an individual seeking an expungement.

Confusion over this provision has deterred individuals who might qualify for it from filing for expungements using the provision. And, in any case, many individuals who would not qualify as indigent under the state civil procedure rule still cannot afford the onerous expungement fees — which far exceed civil filing fees. This is especially true for people who need more than one record event expunged.

(*Id*. at ¶¶ 87–89.) Plaintiffs thus urge that, "[a]side from the general IFP process" and its related "shortcomings and confusion," as described by Plaintiffs, Louisiana law "includes no inquiry into an expungement seeker's ability to pay the $550 fee" and "makes no exception for indigence[.]" (*Id*. at ¶¶ 90–91.)

Additionally, Louisiana law provides for exemption from payment of fees under certain circumstances, as Plaintiffs observe in the Amended Complaint. (*See id*. at ¶ 92 (citing La. Code Crim. Proc. art. 983(F)).) Article 983 provides for waiver of such fees as follows:

F. An applicant for the expungement of a record shall not be required to pay any fee to the clerk of court, the Louisiana Bureau of Criminal Identification and Information, sheriff, the district attorney, or any other agency to obtain or execute an order of a court of competent jurisdiction to expunge the arrest from the individual's arrest record if a certification obtained from the district attorney is presented to the clerk of court which verifies that the applicant has no felony convictions and no pending felony charges . . . and at least one of the following applies:

(1) The applicant was acquitted, after trial, of all charges derived from the arrest, including any lesser and included offense.

(2) The district attorney consents, and the case against the applicant was dismissed or the district attorney declined to prosecute the case prior to the time limitations prescribed in Chapter 1 of Title XVII of this Code, and the applicant did not participate in a pretrial diversion program.

(3) The applicant was arrested and was not prosecuted within the time limitations prescribed in Chapter 1 of Title XVII of this Code and did not participate in a pretrial diversion program.

(4) The applicant was determined to be factually innocent and entitled to compensation for a wrongful conviction pursuant to the provisions of R.S. 15:572.8.

(5) Concerning the arrest record which the applicant seeks to expunge, the applicant was determined by the district attorney to be a victim of a violation of R.S. 14:67.3 (unauthorized use of "access card"), a violation of R.S. 14:67.16 (identity theft), a violation of R.S. 14:70.4 (access device fraud), or a violation of any other crime which involves the unlawful use of the identity or personal information of the applicant.

La. Code Crim. Proc. art. 983(F). So while Louisiana's expungement law allows for waiver of fees, Plaintiffs aver that the applicant's eligibility for the statutory waiver is based on the underlying criminal event they seek to have expunged, in addition to having no prior felony convictions or pending felony charges. (*See* Doc. 60 at ¶ 14; *see also id.* at ¶¶ 15–16.) Accordingly, Plaintiffs allege:

Under the application of the law by named Defendants and the Defendant class members throughout the state, the lack of any mechanism to consider an expungement seeker's ability to pay, failure to offer fee waivers on the basis of indigence despite offering them on other bases, and overall irrational application of Louisiana state expungement law severely impedes individuals who would qualify for expungements but cannot afford them from earning a living, providing for families, maintaining stable housing, and otherwise securing their own and their families' wellbeing.

(*Id.* at ¶ 17.) Plaintiffs further allege that Defendants' application of the law to provide expungement to only those who have the ability to pay "amounts to wealth-based discrimination in violation of fundamental fairness, procedural due process, and equal protection rights." (*Id.* at ¶ 18.)

Plaintiffs assert claims on behalf of themselves and the proposed plaintiff classes under 42 U.S.C. § 1983 for violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution. (*See id.* at ¶¶ 25, 199–218.) Plaintiffs' Amended Complaint seeks class action status, declaratory judgment, injunctive relief, attorneys' fees and costs, and any other relief the Court deems proper. (*See id.* at ¶¶ 157–98, 219–23.)

Defendants filed their first motions to dismiss in response to the Plaintiffs' original *Complaint* (Doc. 1), seeking dismissal of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7), and 23(d)(1). (*See* Doc. 26.)[3] In this Court's *Ruling and Order* ("Ruling") granting Defendants' motions in part, the Court dismissed Plaintiffs' claims without prejudice for lack of standing. (*See* Doc. 55 at 27.) The Court further granted Plaintiffs leave to amend the operative complaint to cure the deficiencies identified in the Court's Ruling as to standing to bring their claims. (*See id*.) Plaintiffs subsequently filed their Amended Complaint. (Doc. 60.)

Defendants now move to dismiss Plaintiffs' Amended Complaint pursuant to (1) Federal Rule of Civil Procedure 12(b)(1) for lack of standing and based on the Tax Injunction Act, (2) Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and (3) Federal Rule of Civil Procedure 12(b)(7) for failure to add required parties. (Doc. 69.) For the reasons set forth below, the Court will grant Defendants' motion to dismiss based on Rule 12(b)(1) for lack of subject-matter jurisdiction. Specifically, the Court concludes that Plaintiffs lack standing and, for that reason, will dismiss without prejudice Plaintiffs' action for lack of subject-matter jurisdiction. Defendants also move for dismissal under Rule 12(b)(1) based on the Tax Injunction Act; however, as discussed below, the Court does not find that the Tax Injunction Act bars the exercise of federal jurisdiction over the claims asserted in the Plaintiffs' Amended Complaint. Finally, the Court does not (and cannot) reach the merits of Plaintiffs' constitutional challenges to Louisiana's expungement laws and does not address the other grounds for dismissal raised in Defendants' motion under Rules 12(b)(6) and 12(b)(7).

---

[3] Defendants Welborn and Moore brought the previous motion to dismiss. (*See* Doc. 26.) Additionally, Attorney General Jeff Landry filed a *Motion to Dismiss or for a More Definite Statement* under Rule 12(e). (*See* Doc. 27.)

## II.    Rule 12(b)(1) Standard

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit has explained:

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits . . . .

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

## III.    Discussion of Subject-Matter Jurisdiction under Rule 12(b)(1)

### A.  Parties' Arguments

#### 1. Defendants' Original Memorandum (Doc. 69-1)

Defendants' motion seeks dismissal of Plaintiffs' claims for lack of subject-matter jurisdiction under Rule 12(b)(1). (*See* Doc. 69-1 at 1–9.) Defendants raise three main arguments in support of their Rule 12(b)(1) motion. (*See id.* at 1.) First, "Plaintiffs lack standing to challenge the processes by which Louisiana law accounts for ability to pay because they did not seek relief under the State's *in forma pauperis* provisions or a discretionary fee waiver." (*Id.* (citing *Davis v. Tarrant Cnty.*, 565 F.3d 214, 220 (5th Cir. 2009)).) Second, Plaintiffs' claims fail on the merits because they are foreclosed by governing Supreme Court and Fifth Circuit precedent. (*Id.*) Third,

even if Plaintiffs' claims are not foreclosed, "the Tax Injunction Act bars bringing them in federal court." (*Id.*)

Regarding their first argument in support of dismissal for lack of standing, Defendants contend that Louisiana's expungement scheme accounts for indigence, such that Plaintiffs have not alleged a cognizable injury. (*Id.* at 3.) Defendants assert that the IFP articles in the Louisiana Code of Civil Procedure, which have been expressly incorporated into Louisiana's expungement law, "allow indigents to apply for expungement without paying costs." (*See id.* at 3–4 (citing La. Code Civ. Proc. art. 5181(A)).)

Defendants assert that, contrary to Plaintiffs' allegation that IFP status only covers the $200 portion of the fee that goes to the Clerk, "an order granting permission to proceed *in forma pauperis* in the context of a motion for expungement does cover the entire $550 processing fee, not just that portion assessable to the clerk of court." (*Id.* at 4 (referencing Doc. 60 at ¶ 87).) In support of their interpretation, Defendants point to the absence of any such limitation in the expungement law or IFP articles. (*Id.*) Additionally, Defendants reference the text of Louisiana Code of Civil Procedure article 5185, which states that a party permitted to litigate without payment of costs is entitled to "[a]ll services required by law of a *sheriff, clerk of court*, court reporter, notary, *or other public officer* in, or in connection with, the judicial proceeding." (*Id.* (quoting La. Code Civ. Proc. art. 5185(A)(1)).)

Defendants note that Plaintiffs do not allege they attempted to seek permission to proceed IFP in connection with expungement, which would have accounted for their indigence and "provided state-law remedies if IFP status was denied." (*Id.*) Defendants also assert that, despite Plaintiffs' allegations that the statutory fee waiver is discretionary, "Plaintiffs do not allege they sought a fee waiver from any official who has that discretion." (*Id.*) And so, because "Plaintiffs

8

did not seek relief from expungement fees before pursuing this action," Defendants maintain that Plaintiffs "lack injury." (*See id.* (citing *Davis*, 565 F.3d at 220).) In any event, Defendants argue that Plaintiffs' claims are meritless "because Louisiana law does, in fact, account for an expungement applicant's ability to pay statutory fees by incorporating the State's IFP provisions." (*See id.* at 4–5.)

Next, Defendants argue that requiring them to permit Plaintiffs to utilize the expungement process without complying with Louisiana's IFP provisions or a statutory fee waiver would violate certain provisions of the Louisiana Constitution, including the prohibition against unfunded mandates on political subdivisions and the prohibition against donations of public funds or things of value. (*Id.* at 6–7 (citing La. Const. art. VI, § 14(A)(1); La. Const. art. VII, § 14(A)).) Defendants urge that this Court "should presume the legislature would not have passed the expungement statute without a local source of revenue, i.e., the fee provisions[,]" and therefore the fee provisions are not severable from the rest of the statute. (*Id.* at 7–8.)

Finally, Defendants argue that Plaintiffs' claims are barred by the Tax Injunction Act because the fees imposed by the expungement statute at issue is a "tax" within the meaning of the Act. (*Id.* at 8.) Defendants thus contend that the Tax Injunction Act "bars this Court from exercising jurisdiction, even if the tax is alleged to be unconstitutional." (*See id.* at 8–9.)

## 2. Plaintiffs' Opposition (Doc. 75)

In opposition, Plaintiffs argue that the Court has subject-matter jurisdiction over their claims because they have established standing as to all named Defendants. (*See* Doc. 75 at 6.) Plaintiffs generally aver that they meet all three standing requirements because they "want to apply to expunge a past criminal conviction (injury), are prevented from doing so by Defendants' imposition of a non-waivable fee (causation), and through this lawsuit hope to remove a substantial

barrier (the non-waivable fee) that prevents them from accessing the expungement process (redressability)." (*Id*. at 6–7.)

Plaintiffs then contend that they meet the injury requirement by (1) having a criminal conviction on their record and (2) being barred from a part of the criminal process. (*See id*. at 7.) Plaintiffs dispute Defendants' argument that "Plaintiffs lack injury because they have not exhausted their state remedies[,]" contending that "there is no fee waiver for which the Plaintiffs are eligible, and thus no way to exhaust." (*Id*. at 8 (citing Doc. 60 at ¶ 16).) Additionally, "[t]here are no ability-to-pay assessments or procedures in place[,]" according to Plaintiffs. (*Id*. (citing Doc. 60 at ¶ 37).) Plaintiffs further contend that "exhaustion of state remedies is not a requirement for a lawsuit under Section 1983." (*Id*. (citing *Monroe v. Pape*, 365 U.S. 167, 183 (1961), *overruled on other grounds by Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978)).)

Regarding causation, Plaintiffs assert that the "named Defendants block access to the expungement process by imposing fees without waivers." (*Id*.) In support of this assertion, Plaintiffs reference that Welborn and Moore "charge the statutorily-allowed maximum fee rather than making an allowance for those who cannot afford to pay it[,]" as alleged in their Amended Complaint, and that all named Defendants often deny fee waivers. (*See id*. (citing Doc. 60 at ¶¶ 9, 15–16).) As to redressability, Plaintiffs argue that "an injunction requiring indigency waivers or ability-to-pay considerations would suffice as redress" for their claimed injuries, even though they are not directly seeking expungement. (*Id*. at 9.)

Next, Plaintiffs dispute Defendants' arguments regarding Louisiana's IFP provisions. (*Id*. at 9–10.) Plaintiffs urge that "Louisiana's IFP provisions do not provide adequate—or any—protection to indigent expungement seekers such as Plaintiffs" for multiple reasons. (*Id*. at 9.) First, Plaintiffs argue that the IFP provisions do not constitute an indigency waiver "because IFP status

is entirely contingent on success." (*Id*.) Plaintiffs submit that, under Louisiana law, "an unsuccessful litigant must pay court costs *even if they qualify for IFP*." (*Id*. (citing La. Code Civ. Proc. art. 5186).) Second, Plaintiffs argue that Louisiana's IFP provisions do not apply to the expungement process. (*Id*.) In support of this argument, Plaintiffs cite to Louisiana Code of Civil Procedure article 5185(A), which requires "an order of court" to "permit[] a party to *litigate* without payment of costs." (*Id*. (citing La. Code Civ. Proc. art. 5185(A)(1)).) Plaintiffs reason that "[e]xpungement is a non-adversarial process" in which "no litigation [is] involved," such that "IFP does not apply." (*Id*. at 9–10.) Third, "[e]ven if IFP could apply," Plaintiffs contend that "eligibility is limited to those making less than 125% of the federal poverty line." (*Id*. at 10 (citing Doc. 60 at ¶ 86).) Plaintiffs further argue:

> The statutory IFP provisions themselves do not even guarantee applicability for those under 125% of the federal poverty line, instead creating only a "rebuttable presumption" of IFP eligibility. La. Code Civ. Pro. art. 5183(B). Because Defendants charge $550 per record event, an individual like Plaintiff T.R. with nine record events would have to pay $4,950. ECF Doc. 60 at p. 12, ¶ 51. The 125% threshold would be $14,355 per year, but someone can be above that threshold while still unable to pay $4,950, especially if their necessary expenses for shelter, food, clothing, transportation, medical care, telecommunication, and other necessities exceed their income. And again, because eligibility is never guaranteed (even below the 125% threshold), IFP is inadequate as a true ability-to-pay calculation.

(*Id*. (footnote omitted).) Finally, Plaintiffs contend that IFP is inadequate "because it can, at most, lead to a temporary waiver of only the clerk's portion of the expungement fee—$200 out of the $550." (*Id*. (citing Doc. 60 at ¶ 87).) Thus, Plaintiffs urge that, contrary to Defendants' assertions, Louisiana's existing IFP provisions are not fee waivers and do not undermine standing. (*Id*. at 9–10.)

Plaintiffs then reject Defendants' remaining jurisdictional arguments as misplaced and incorrect. (*See id*. at 11–12.) First, Plaintiffs maintain that they seek "prospective relief regarding

as-applied conduct and an interpretation of existing law consistent with federal constitutional requirements[,]" rather than invalidation of severable portions of Louisiana's expungement statute. (*Id.* at 11 (citing Doc. 60 at ¶¶ 219–33).) Additionally, Plaintiffs aver that, because the statutory language at issue "already allows fees down to $0, nothing in Plaintiffs' request for indigency waiver requires severability of any portion of the statute." (*Id.* (referencing La. Code Crim. Proc. art. 983(A) and (B)(1)–(4)).) Plaintiffs further dispute Defendants' argument that the relief sought would result in an unfunded mandate or prohibited donation of public funds in violation of Louisiana's Constitution. (*See id.* at 11–12.) Plaintiffs emphasize that they do not seek total fee abolition; rather, they "ask for a *procedure* in place to assess the ability of an individual to pay." (*See id.*)

Finally, Plaintiffs contend that the Tax Injunction Act does not bar their challenge to Louisiana's expungement fees "because such fees are not taxes." (*Id.* at 12.) Instead, Plaintiffs characterize the statutory expungement fees as "processing fees" or "fees for a service," which are "imposed only on a narrow class of persons who seek expungement." (*See id.* at 12–13 (quotation omitted) (citing *Neinast v. Texas*, 217 F.3d 275, 278 (5th Cir. 2000)).)

### 3. Defendants' Reply (Doc. 80)

In their reply, Defendants reiterate that the Court lacks subject-matter jurisdiction because Plaintiffs lack standing and the Tax Injunction Act bars Plaintiffs' claims. (*See* Doc. 80 at 1–5.) In response to Plaintiffs' assertions regarding Louisiana's IFP provisions, Defendants urge that "Plaintiffs refuse to accept that what they seek *is already provided in the very law they attack*." (*Id.* at 2.) Nevertheless, Defendants contend: "That Plaintiffs nakedly contradict the plain reading of Louisiana's IFP statute is not enough to survive a motion to dismiss." (*Id.*)

Regarding Plaintiffs' characterization of their injury as having a prior conviction on their records, Defendants state that "Louisiana law merely provides for 'an expunged *record* of arrest or conviction,' *i.e.*, an order making a record non-public." (*Id*. (citing La. Code Crim. Proc. art. 983(A)).) For that reason, Defendants aver, "[e]ven after a record is expunged, the conviction remains." (*Id*. at 2–3 (citing La. Code Crim. Proc. arts. 971(2), 983(E)).) In any event, Defendants emphasize that "Plaintiffs' challenge is to the *process* by which fees are waived." (*Id*. at 3.) As a result, "Plaintiffs have no injury at all until they apply for and are denied IFP status or a fee waiver." (*Id*.) Additionally, Defendants argue that Plaintiffs' opposition fails to rebut that redressability is lacking and that the Tax Inunction Act bars federal jurisdiction. (*See id*. at 4–5.)

## B.  Applicable Law

### 1. Article III Standing

Article III of the Constitution limits the purview of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The standing doctrine is a threshold inquiry to adjudication, which defines and limits the role of the judiciary." *Berry v. LoanCity*, No. 18-888, 2019 WL 2870849, at *4 (M.D. La. July 3, 2019), *on reconsideration in part*, No. 18-888, 2019 WL 5783418 (M.D. La. Nov. 6, 2019) (quoting *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 570 F. Supp. 2d 851, 853 (E.D. La. 2008)). "It is well settled that unless a plaintiff has standing, a federal district court lacks subject matter jurisdiction to address the merits of the case." *Id*. (quoting *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 570 F. Supp. 2d at 853). "In the absence of standing, there is no 'case or controversy' between the plaintiff and defendant which serves as the basis for the exercise

of judicial power under Article III of the constitution." *Id.* (quoting *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 570 F. Supp. 2d at 853).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citing *Lujan*, 504 U.S. at 560–61). The party invoking federal jurisdiction bears the burden of proving standing. *Id*. The court at the pleading stage bases its decision on the allegations of the complaint, and the complaint must "clearly . . . allege facts demonstrating" each element of standing. *Id*. (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

To satisfy the first element of standing, injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 578 U.S. at 339 (citing *Lujan*, 504 U.S. at 560). A plaintiff "must show 'that they face a palpable present or future harm, not harm that is conjectural or hypothetical.'" *Levy v. La. Dep't of Pub. Safety & Corr.*, 371 F. Supp. 3d 274, 284 (M.D. La. 2019) (deGravelles, J.) (citations and quotation marks omitted) (quoting *Perez v. Drs. Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 183 (5th Cir. 2015)). "An injury that is based on a 'speculative chain of possibilities' does not confer Article III standing." *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)).

There must also be a causal connection between the injury and the conduct complained of—the injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party." *Simon v. E. Ky. Welfare Rts. Org.*,

14

426 U.S. 26, 41–42 (1976). And "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43).

## 2. *In Forma Pauperis*

The privilege of litigating in forma pauperis is set forth in Louisiana Code of Civil Procedure article 5181(A), which provides, in pertinent part:

> [A]n individual who is unable to pay the costs of court because of his poverty and lack of means may prosecute or defend a judicial proceeding in any trial or appellate court without paying the costs in advance or as they accrue or furnishing security therefor.

The Louisiana Supreme Court, in applying Article 5181, has explained:

> The purpose of these []in forma pauperis[] articles is to enable indigent persons to assert their causes in the courts of this state. This statutory privilege is to be interpreted liberally in favor of giving indigent persons their day in court.
>
> In determining a litigant's qualification or not to proceed as an indigent, the courts have taken a realistic view as to the litigant's actual ability to advance or secure court costs out of net income available for that purpose, after payment of reasonable living expenses and debts, and in view of unencumbered property other than a modest family residence.
>
> * * *
>
> [I]n the absence of clear abuse, the appellate courts do not disturb the trial court's discretion in granting or denying the privilege to litigate in forma pauperis, based upon that court's factual determination of the litigant's ability or inability to pay the court costs or to make bond therefor.
>
> Primarily to the trial court is entrusted the duty, on the one hand to see that the privileges granted by the act are not abused, but on the other to permit a qualified indigent such privileges so as to not deprive him of the opportunity of having his claim adjudicated simply because he is financially unable to meet the cost requirements of asserting his claim in the courts.

*Benjamin v. Nat'l Super Markets, Inc.*, 351 So. 2d 138, 140–142 (La. 1977) (internal quotation marks and citations omitted), *writ denied sub nom. Benjamin v. Nat'l Super Markets, Inc.*, 366 So. 2d 561 (La. 1979).

### 3. Tax Injunction Act

The Tax Injunction Act provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy, and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "The Act functions as a broad jurisdictional impediment to federal court interference with the administration of state tax systems." *Neinast*, 217 F.3d at 277–78 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

Whether the Tax Injunction Act bars federal jurisdiction in this case depends on whether the Louisiana expungement statute in question imposes a "tax" or a "fee." As the Fifth Circuit recently explained in *Texas Entertainment Association, Inc. v. Hegar*, "'[d]istinguishing a tax from a fee is often a difficult task' because 'the line between a "tax" and a "fee" can be a blurry one.'" 10 F.4th 495, 505 (5th Cir. 2021) (quoting *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1011). "Taxes and fees are not categorically mutually exclusive; rather, they exist on 'a spectrum with the paradigmatic fee at the one end and the paradigmatic tax at the other.'" *Id.* (quoting *Neinast*, 217 F.3d at 278). In *Home Builders Association of Mississippi, Inc.*, the Fifth Circuit identified three factors for distinguishing between a tax and a fee:

> [T]he classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to raise money to help defray an agency's regulatory expenses.

143 F.3d at 1011 (footnotes and citations omitted). "Whether a charge is a fee or a tax is a question of federal law." *Neinast*, 217 F.3d at 278 (citing *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010 n.10).

16

### C.  Analysis

Defendants move for dismissal of Plaintiffs' action pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction based on (1) Plaintiffs' lack of standing to sue and (2) the Tax Injunction Act. The Court addresses each of Defendants' asserted bases for dismissal in turn.

#### 1. Standing

In order to invoke the Court's jurisdiction, Plaintiffs must sufficiently allege that they (1) have suffered an injury in fact that (2) was caused by or is traceable to Defendants' actions, and that (3) would be redressed by a favorable decision. *See Lujan*, 504 U.S. at 560–61. Importantly, Plaintiffs' alleged injury must be "both concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *See id*.

Plaintiffs assert that Louisiana's expungement statute, as applied by Defendants, is unconstitutional based on absence of ability-to-pay inquiries and fee waivers for indigence. (*See* Doc. 60 at ¶ 222; *see also* Doc. 75 at 6, 11–12.) Plaintiffs claim that Defendants' application of the expungement statute has injured Plaintiffs by denying them access to the expungement process, such that they continue suffering from the collateral consequences of having criminal record events that remain on their records. (*See* Doc. 60 at 18–29.) Defendants counter that Plaintiffs have not alleged a cognizable injury that is actual or imminent. (*See* Doc. 69-1 at 3–4.) Specifically, Defendants maintain that the expungement statute relieves certain applicants of the requirement to pay the associated fees through incorporation of the State's IFP provisions—which do, in fact, account for an expungement applicant's ability to pay the statutory fees—as well as the discretionary fee waiver. (*See id*. at 4–5.) Yet Plaintiffs have not alleged that they attempted to avail themselves of the processes available to them under the challenged statute. (*See id*.) Without such allegations, Defendants contend that Plaintiffs lack standing. (*See id*.) The Court agrees and

finds that Plaintiffs claims must be dismissed without prejudice for lack of standing pursuant to Rule 12(b)(1).

In 2018, the Louisiana Legislature amended Louisiana Code of Criminal Procedure article 983 to add subparagraph (I), which incorporates the Louisiana Code of Civil Procedure's IFP provisions. *See* La. Code Crim. Proc. art. 983(I) ("[A]n applicant for expungement of a record . . . may proceed in forma pauperis in accordance with the provisions of Code of Civil Procedure Article 5181 et seq."). The IFP provisions in the Louisiana Code of Procedure provide a procedure for one who cannot afford to pay court costs to prosecute or defend litigation without paying costs in advance, as they accrue, or furnishing security. *See* La. Code Civ. Proc. arts. 5181–5188. "The ability to litigate without prior payment of costs (commonly referred to as having pauper status) is a privilege, not a right, and one seeking to take advantage of this privilege must clearly be entitled to it, must apply for permission to do so, and must submit specific documentation." *Thibodeaux v. Rental Ins. Servs., Inc.*, 13-1947 (La. App. 1 Cir. 4/24/15), 2015 WL 1882456, at *10 (citing La. Code Civ. Proc. arts. 5182 and 5183), *writ denied*, 15-1213 (La. 9/25/15), 178 So.3d 567.

Considering the foregoing, the Court finds that Louisiana's expungement statute does, in fact, account for the expungement seeker's ability to pay the statutory fees for obtaining a court order expunging a record. *See* La. Code Crim. Proc. art. 983. This is evidenced by the statute's text, which clearly states: "Notwithstanding any provision of law to the contrary, an applicant for the expungement of a record . . . may proceed in forma pauperis in accordance with the provisions of Code of Civil Procedure Article 5181 et seq." *Id*. art. 983(I).

Though Plaintiffs suggest that Louisiana's IFP process does not apply in the expungement context because there is no adversarial litigation involved in obtaining an expungement (*see* Doc. 75 at 9–10), the Court is not persuaded by this interpretation. Setting aside the obvious fact that

18

the expungement statute expressly incorporates the IFP provisions, Louisiana Code of Civil Procedure article 5181 provides that "an individual who is unable to pay the costs of court because of his poverty and lack of means may prosecute or defend a *judicial proceeding in any trial or appellate court*," suggesting that IFP status extends to any proceedings before any Louisiana court. *See* La. Code Civ. Proc. art. 5181(A) (emphasis added).

This more expansive interpretation is further bolstered by the Louisiana Supreme Court's decision in *Benjamin v. National Super Markets, Inc.*, 351 So.2d 138 (La. 1977). In reversing the appellate court's judgment denying the plaintiffs the right to proceed in forma pauperis, the Louisiana Supreme Court stated: "The purpose of these (in forma pauperis) articles is to enable indigent persons to assert their causes in the courts of this state. This statutory privilege is to be interpreted liberally in favor of giving indigent persons their day in court." *Id*. at 140–41 (quotation marks and citations omitted). Additionally, in *Carline v. Carline*, the plaintiff filed a petition for writ of mandamus directed to the Clerk of Court, after the Clerk allegedly refused to provide a certified copy of the judgment of divorce pending payment of outstanding court costs. 93-1505, p. 2 (La. App. 1 Cir. 10/7/94), 644 So.2d 835, 835–36. The plaintiff was permitted to prosecute her divorce action in forma pauperis, and the trial court granted a judgment of divorce in favor of both the plaintiff and defendant. *See id*. The appellate court held that it was improper for the Clerk to require the plaintiff to pay the court costs before providing her with a copy of the judgment. *See id*. at 837. In reaching this decision, the appellate court observed:

> The provisions and approach utilized in the new divorce procedures do not specifically provide for one party to "win" and therefore have judgment in his favor, thereby condemning all costs to be paid by his opponent. However, we do not believe these new procedures should undermine the rights available to a litigant with pauper status.

*Id.* at 836. Thus, the "new streamlined divorce procedures" available under Louisiana law, which encourage parties to resolve issues incident to the divorce proceeding by mutual agreement, did not undermine the rights available to a litigant with pauper status. *See id.* at 836–37. Likewise, here, the Court finds that the absence of an adversarial component in the typical expungement proceeding does not render pauper status unavailable to an expungement applicant who would otherwise qualify.

Similarly, the Court is not persuaded by Plaintiffs' assertion that IFP status, at most, provides a temporary waiver of only the Clerk of Court's $200 portion of the expungement processing fees. (*See* Doc. 75 at 10 (citing Doc. 60 at ¶ 87).) First, there is nothing in the text of the expungement statute or the IFP articles to support such a narrow interpretation. Louisiana Code of Civil Procedure article 5185 states, in part:

> A. When an order of court permits a party to litigate without the payment of costs until this order is rescinded or expires, he is entitled to:
>
> (1) All services required by law of a sheriff, clerk of court, court reporter, notary, or other public officer in, or in connection with, the judicial proceeding, including but not limited to the filing of pleadings and exhibits, the issuance of certificates, the certification of copies of notarial acts and public records, the issuance and service of subpoenas and process, the taking and transcribing of testimony, and the preparation of a record of appeal.

La. Code Civ. Proc. art. 5185(A)(1). Moreover, Plaintiffs cite no legal authority to support their position.

The Court recognizes that a litigant's ability to proceed IFP is not guaranteed, as Plaintiffs point out in their brief. (*See* Doc. 75 at 10.) But the Louisiana jurisprudence does not support Plaintiffs' suggestion that whether a litigant makes less than 125% below the federal poverty line is the deciding factor for IFP status. (*See id.*) In *Benjamin*, for example, the Louisiana Supreme

Court duly considered—and rejected—such a restrictive approach to conferring IFP status in favor

of a more realistic one, reasoning:

> In our view, the fallacy of the defendant's argument is the view advanced by it that, in order to proceed in forma pauperis, the plaintiffs are obliged to divert their income to court costs of this litigation, rather than to food, schooling, or other obligations, and to liquidate their equity in their modest home and furniture. The defendant stated in brief to the court of appeal: "It is submitted that the Article contemplates someone destitute of means except perhaps as may be derived from public assistance or charity."
>
> The jurisprudence cited above has uniformly rejected the defendant's view. The purpose ascribed to the legislative privilege is to assure that no litigant be deprived of his day in court because of a lack of financial means to pay court costs.
>
> Thus, an individual's privilege to litigate his claim in our courts is not regarded as a luxury. Rather, it is regarded as a privilege granted him in the interest of individual justice to him, and in the interest of a judicial system designed to provide justice for all. The grant of the privilege to litigate without prepayment of costs is designed to deny depriving any individual of his day in court merely because of his lack of financial means to pay or secure court costs.

351 So.2d 138, 141 (La. 1977). Similarly, in *Roy v. Gulf States Utilities Co.*, the Louisiana Third

Circuit Court of Appeal stated:

> The legislative intent, we believe, was for that privilege [to litigate in forma pauperis] to be restricted to those who are clearly entitled to it so that the statute will not be abused, but that a liberal construction should be applied in close or questionable cases to make sure that a litigant who is entitled to such a privilege is not deprived of it.

307 So.2d 758, 760 (La. App. 3 Cir. 1975). *See also Hollier v. Broussard*, 220 So.2d 175, 177 (La.

App. 3 Cir. 1969) (explaining that, in determining whether a litigant qualifies to proceed in forma

pauperis, "[t]he general approach . . . is to balance against income the needs of living and of paying

other debts and expenses, and then to determine whether the residual income (or savings or surplus

property) is adequate to pay the expected costs of litigation . . . ."). To cite another example, in

*Burks v. McKean*, the Louisiana Second Circuit Court of Appeals held that the trial court abused

its discretion in refusing to permit plaintiffs the right to prosecute their action in forma pauperis.

544 So.2d 502 (La. App. 2 Cir. 1989). In reviewing the trial court record to determine the plaintiffs'

qualifications to proceed in forma pauperis, the appellate court observed:

> The evidence presented at the . . . hearing adequately supports the plaintiffs' contention that they are unable to pay court costs and are thus entitled to proceed in forma pauperis on appeal. Although the plaintiffs did receive a settlement from one of the parties, these funds were expended on modest home repairs made necessary by Mrs. Burks' condition. Additionally, Mr. Burks is the only employed member of the household, and his income is insufficient to meet the family's needs. Due to her injuries, Mrs. Burks is in continuing need of costly medical care and medication. Furthermore, the evidence demonstrated that the plaintiffs could not even obtain a bank loan of $2,000.

*Id*. at 506. The appellate court thus concluded that the plaintiffs' motion to proceed in forma

pauperis was meritorious. *See id*.

It is true, as Plaintiffs assert, that a litigant permitted to proceed IFP may still be required

to pay court costs. Regarding payment of court costs by a litigant who is unsuccessful, Louisiana

Code of Civil Procedure article 5188 provides:

> Except as otherwise provided by Articles 1920 and 2164, if judgment is rendered against a party who has been permitted to litigate without the payment of costs, he shall be condemned to pay the costs incurred by him, in accordance with the provisions of Article 5186, and those recoverable by the adverse party. The failure of the indigent party to pay the costs specified in this Article shall not prevent entry of a judgment in favor of any party who is not responsible for the costs.

Conversely, if successful in the proceeding and assuming the court's judgment does not say

otherwise, the IFP litigant is entitled to waive payment of all costs. *See* La. Code Civ. Proc. art.

5186 ("If judgment is rendered in favor of the indigent party, the party against whom the judgment

is rendered shall be condemned to pay all costs due . . . ."). Moreover, Louisiana Code of Civil

Procedure article 1920 vests trial courts with discretion to assess costs as they deem equitable.

Specifically, article 1920 states, in part: "Except as otherwise provided by law, the court may

render judgment for costs, or any part thereof, against any party, as it may consider equitable."

Louisiana jurisprudence recognizes the ability of trial courts to assess costs as they deem

22

appropriate, subject to the more specific directives found in articles 5186 and 5188. *See, e.g.*, *Marshall v. Maloney Carloading, Inc.*, 154 So.2d 85 (La. App. 4 Cir. 1963) (affirming judgment dismissing plaintiff's suit, in forma pauperis, to recover worker's compensation but remarking that plaintiff "should be relieved from the payment of all costs" (citing La. Code Civ. Proc. art. 1920)); *Brownell v. Brownell*, 00-1803, p. 2 (La. App. 3 Cir. 10/3/01), 799 So.2d 587, 588 ("We do recognize that Brownell is not completely immune from paying court costs. In fact, a litigant remains liable for costs, despite the granting of the privilege allowing her to proceed without her prepayment or bonding. Further, if she subsequently becomes able to pay the immediate expenses, then the court may collect the costs from her provided that they have not been subsequently taxed against the opposing party upon the litigant's prevailing in his litigation.") (internal citations omitted) (citing *Benjamin*, 351 So.2d at 141–42).

Here, Plaintiffs allege that they desire expungement of their eligible criminal records and that Defendants have barred them from obtaining expungements because of their inability to pay the related fees. But having determined that Louisiana's expungement laws do account for an applicant's ability to pay, it does not follow from the allegations of the Amended Complaint that Plaintiffs' ability to access the expungement process was, in fact, hindered by Defendants' conduct concerning the challenged statute. Plaintiffs contend that Louisiana's IFP provisions will not adequately account for their indigence and waive fees in the expungement context—that is, essentially, that they may be unsuccessful in litigation and forced to pay costs—but Plaintiffs fail to allege in the Amended Complaint that they will in fact be unsuccessful and required to pay. Ultimately, such unsupported speculation does not provide a cognizable injury in fact on which to base standing. In other words, on the record before the Court, Plaintiffs have not demonstrated that they have personally suffered "'an invasion of a legally protected interest' that is 'concrete and

particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).

When, as here, the plaintiff does not enjoy standing individually, there is no case or controversy, and the suit must be dismissed. *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) ("[I]f the class representative[s] lack[] standing, then there is no Article III suit to begin with[.]" (citing *Rivera v. Wyeth-Ayerest Labs*, 283 F.3d 315, 319 n.6 (5th Cir. 2002)); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf on himself or any other member of the class."); Fed. R. Civ. P. 12(h)(3). Thus, Plaintiffs' lack of standing also precludes them from representing a class. *See Rivera*, 283 F.3d at 319.

### 2. Tax Injunction Act

Finally, the Court considers whether federal jurisdiction is barred by the Tax Injunction Act. The applicability of the Act in this case depends on whether the expungement fees at issue are "taxes" or "fees." Defendants urge that the expungement fees are "taxes," as contemplated by the Tax Injunction Act. Plaintiffs, by contrast, contend that the statute imposes a fee, such that the Tax Injunction Act does not operate as a jurisdictional bar.

As the Fifth Circuit stated in *Neinast*: "The classic fee is imposed (1) by an agency, not the legislature; (2) upon those it regulates, not the community as a whole; and (3) for the purpose of defraying regulatory costs, not simply for general revenue-raising purposes." 217 F.3d at 278 (citing *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1011). Applying these factors, the Court concludes that the charges referenced in the expungement statute are fees, not taxes; consequently, the Tax Injunction Act does not bar federal jurisdiction.

Regarding the first factor, the charge provided in the expungement statute was imposed by the Louisiana Legislature, which weighs in favor of it being a tax. The Court does not find this fact dispositive, however. The Court notes that the Louisiana Legislature uses the word "fee" instead of "tax" in the statute, and "the statutory text actually chosen by the legislature" is a "good yardstick of the legislature's intent." *See Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 506 (5th Cir. 2021).

As to the second factor, the expungement statute makes clear that the charge is imposed only on people applying for expungements, as opposed to the public at large. This weighs in favor of the charge being a fee. *See Neinast*, 217 F.3d at 278 (noting that a charge is more likely a fee than a tax when it "is imposed only on a narrow class of persons . . . not the public at large").

Lastly, the statute's charge is connected to a specific regulatory purpose, rather than raising general revenue for the State. This is evidenced by the fact that the statute's provisions direct that the processing fees to be charged by the Clerk of Court go to specific agencies involved in the process of effectuating the requested expungement, such as the Louisiana Bureau of Criminal Identification and Information, the Sheriff's office, and the district attorney. *See* La. Code Crim. Proc. art. 983(B)–(D).

Accordingly, considering language of the expungement statute and its overall purpose, the Court finds that the charges are "fees" and thus not subject to the Tax Injunction Act. Nevertheless, as discussed above, Plaintiffs' lack of standing precludes the Court's exercise of jurisdiction over this action.

In the instant motion, Defendants assert that this action is also subject to dismissal for failure to state a claim upon which relief may be granted under Rule 12(b)(6) and for failure to add required parties under Rule 12(b)(7). (*See* Doc. 69 at 1.)  However, where "a Rule 12(b)(1) motion

is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161; *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014); *see also Guidry v. Elberson*, No. 18-1232, 2019 WL 416500, at \*5 (W.D. La. Jan. 10, 2019), *report and recommendation adopted*, No. 18-1232, 2019 WL 406578 (W.D. La. Jan. 31, 2019) (citing same). Federal courts are duty-bound to examine their own subject-matter jurisdiction and may not proceed where it is apparent that jurisdiction does not exist. *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004). Indeed, "[f]or a court to pronounce upon [the merits] when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998); *see also Hotze v. Burwell*, 784 F.3d 984, 991 (5th Cir. 2015) (explaining that if a court determines that a plaintiff lacks standing, that court "do[es] not—indeed, [it] may not—reach the merits of the parties' [constitutional] arguments.") (emphasis in original). Thus, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Williams v. Parker*, 843 F.3d 617, 621 (5th Cir. 2016) ("If the party invoking federal jurisdiction fails to establish any one of injury in fact, causation, or redressability, then federal courts cannot hear the suit." (citing *Rivera*, 283 F.3d at 319)). Therefore, this Court's determination that it lacks subject-matter jurisdiction pretermits analysis of Defendants' additional bases for dismissal under Rules 12(b)(6) and 12(b)(7).

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss Second Amended Complaint* (Doc. 69) filed by Defendants Welborn, Harris, Morrell, Gegenheimer, Moore, Perrilloux, and Connick is **GRANTED IN PART AND DENIED IN PART**. Specifically, **IT IS ORDERED** that Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is **GRANTED**, and Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. In all other respects, Defendants' motion is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Judgment will be entered within seven (7) days of the issuance of this ruling.

Signed in Baton Rouge, Louisiana, on <u>April 18, 2022</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**